# Caldwell, *et al. v.* Caldwell.

*Bill to Ascertain Amount Due on Mortgage and to Apportion It on Several of Certain Lots, and to Redeem.*

(Decided May 11, 1911.   55 South. 515.)

1. *Mortgages; Foreclosure; Right of Mortgagee to Purchase.*—Where a mortgagee forecloses a mortgage upon real estate, which had been partitioned among the joint owners, subject to the lien of the mortgage, the mortgagee may purchase at such a sale and acquire title subject only to the right of redemption.

2. *Tenancy in Common; Right of Co-Tenants; Acquisition of Outstanding Title.*—The facts in this case stated and examined and held not to show such fraud in the acquisition of the title of the mortgagee by one of the co-tenants as to entitle the other co-tenant to relief by being permitted to come in and redeem their part of the property.

3. *Same; Confidential Relation.*—Where a co-tenant verbally agreed with his co-tenant that he would purchase all the property under the mortgage foreclosure sale and give each of his co-tenants time to redeem, and in pursuance of the said agreement said other co-tenant did not bid at the sale, a confidential relation existed between all the co-tenants, which precluded the one acquiring title to the entire land under a deed from the mortgagee who purchased at his foreclosure sale, and authorizing and empowering the other co-tenants to demand within a reasonable time that the purchase should inure to their benefit on their contributing their proportion.

4. *Same; Laches.*—Where heirs who inherited land incumbered by a mortgage, agreed with one of the heirs that he should purchase the land at the foreclosure sale and give the others time to redeem, and the purchasing heir acquired the entire title for himself, a delay by the others of five years before demanding that the purchaser should permit the purchase to inure to their benefit was not such laches as would deprive them of their right. However, they could not dispossess bona fide purchasers of the heir acquiring title, but could only compel such purchasing heir to account for the proceeds.

5. *Same; Rights of Co-Tenant.*—Where real estate was incumbered by a mortgage executed by the owner before his death and his heirs after his death, partitioned the property subject to the mortgage so that each owned and occupied a distinct part; they were tenants in common as to the mortgage.

6. *Descent and Distribution; Obligation of Heirs.*—Where real estate descended to heirs incumbered by a mortgage, and was partitioned among them subject to the mortgage the debt could not be said to be the personal obligation of the heirs and they were under no duty to pay.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Geo. B. Caldwell and others against D. K. Caldwell and others to apportion a mortgage debt as to several parcels of land and for redemption. From a decree overruling demurrers to the bill respondents appeal. Corrected and affirmed.

The case made by the bill is substantially as follows:

The bill avers that complainants and defendants, D. K. and S. Alema Caldwell, were the only heirs at law of one Hamlin Caldwell, who died September 3, 1895, seised of the real estate described in the bill, which was subject to two mortgages to J. E. Butler, who had also purchased the lands at sheriff's sale under execution against said Hamlin Caldwell. On December 28, 1896, Butler transferred his mortgages to Sallie B. Brown, and on December 24, 1896, conveyed the lands by quitclaim deed to Sallie B. Brown, who in turn conveyed them, on November 21, 1898, by quitclaim deed to defendant A. H. Moody, and also transferred the Butler mortgages to him. On September 26, 1895, defendant D. K. Caldwell was appointed administrator of Hamlin Caldwell. On February 8, 1897, an agreement in writing was made, between complainants and defendants D. K. and S. Almena Caldwell, for D. K. Caldwell to make a final settlement of his administration of the estate of Hamlin Caldwell; paragraph 5 of the bill averring in regard thereto: "* * * Without taking ac-

count of the lands of the estate, except account for the rents thereof for the years 1895 and 1896, nor without taking account of the debt covered by the Butler mortgage transferred to Sallie B. Brown, and by her to the defendant A. H. Moody, and by the terms of said written agreement the said settlement was to be made without regard to the land and the debt covered by the said Butler mortgages, and no debt that any of the heirs might owe the said estate of Hamlin Caldwell was to be charged as against any interest the heirs had or might have in the lands belonging to the said Hamlin Caldwell estate that had been transferred or conveyed by J. F. Butler to Sallie B. Brown, and it empowered William B. Bridges, who was then judge of probate of Jackson county, Ala., to appoint one or more commisssioners to value all the lands, and to take from the whole a sufficient quantity of land to bring within three years an amount sufficient to meet the Sallie B. Brown debt, and place the same in the hands of a trustee, and control and sell within three years to pay said debt, and the remainder of said lands, after taking out the said lot or parcel to be sold to pay the Sallie B. Brown debt, the commissioners were to divide into four equal lots or parcels, and to set apart to each heir one of the same, in case the heirs could not agree among themselves. A correct copy of the said written agreement is hereto attached, marked 'Exhibit A,' and made a part hereof, as if here set out in full."

The final settlement was made and a decree rendered by the probate court discharging the administrator. The probate judge, William B. Bridges, appointed W. W. McCutcheon, P. W. Keith, and the defendant A. H. Moody commissioners, and issued to them a commisssion in pursuance of the agreement. The commissioners made a division of the lands into five lots, numbered 1,

2, 3, 4, and 5. Lot No. 1 to be put in the hands of a trustee to control and sell to pay off the debt of Sallie B. Brown (the Butler mortgages and debt); lot No. 2 to S. Almena Caldwell; lot No. 4 to George B. Caldwell, and lot No. 5 to Europe H. Caldwell. On the division, each heir went into possession of his or her respective lot, and, the bill avers, became the owner thereof. On October 11, 1902, the Aultman Company filed a bill against the complainants herein and defendants D. K. Caldwell and A. H. Moody praying to have the mortgages held by Moody and the quitclaim deed from Sallie B. Brown, held and treated as a mortgage, and to ascertain the amount, etc. A decree of sale was rendered by agreement; the decree directing a sale in separate lots. The lands were all sold by the register. A. H. Moody, defendant herein, purchased all of them for $16,000, being the amount of the mortgages, etc., held by him, plus the amount of the decree in favor of the Aultman Company, the costs in the chancery court, and the fee of defendants' solicitor in that case, and received a deed from the register.

In paragraph 11 of the bill it is averred: "At the time of said sale, and shortly before, the defendant D. K. Caldwell, agreed with the complainant herein that he would procure the defendant A. H. Moody to purchase said lands at and for the amount due upon said mortgages, transferred by Sallie B. Brown to the said A. H. Moody, added to the amount of said decree and the cost in the case in which it was rendered, and that such purchase would be for the benefit of all the heirs of Hamlin Caldwell, deceased, to wit, the complainants herein and the defendants D. K. Caldwell and S. Almena Caldwell, and allow the said heirs five years in which to redeem said property; and the said D. K. Caldwell assured these complainants that he had made

such agreement with the said Moody, and thereby induced these complainants not to bid at said sale on said lands, and to make no further effort to procure a purchaser in the interest of the heirs of Hamlin Caldwell, deceased, although they had made arrangements to this effect."

It is averred in paragraph 12 that: "At the time of the agreement, referred to in the last paragraph, of the said D. K. Caldwell, the said A. H. Moody was fully advised as to the agreement which had theretofore been made between these complainants and the defendants D. K. Caldwell and S. Almena Caldwell, providing for the settlement of the administration of D. K. Caldwell of the estate of Hamlin Caldwell, and had been one of the commissioners appointed by the probate judge of said county to divide said lands and allot the several tracts thereof of the said lands. And by reason of the agreement and understanding between the said D. K. Caldwell and these complainants, which is hereinbefore set forth, all of said lands were sold in one body, instead of separate tracts, as provided for in the said decree in the case of *Aultman Company et al., v. E. H. Caldwell et al.,* which is made an exhibit hereto."

The bill alleges that defendant D. K. Caldwell conspired with A. H. Moody to deprive complainants of any interest in the lands, by causing Moody to purchase the lands and convey the same, and all interests in them, to said D. K. Caldwell. Said Moody executed to said D. K. Caldwell, on May 4, 1905, a conveyance of all of said lands, which was filed for record June 16, 1905. D. K. executed to Moody a mortgage on the lands for $16,000, the amount of Moody's bid, which, upon the records, is dated January 16, 1905, and appears to have been acknowledged May 4, 1905, and was filed for record June 1, 1905. D. K. procured the conveyance to

himself from Moody without the knowledge, consent, or
approval of complainants. They were not aware that
he had procured the legal title until they discovered the
deed in the probate judge's office in the latter part of
the summer of 1905. It is averred on information and
belief, that D. K. and Moody have conveyed to de-
fendants Charles E. and William Webb a portion of the
lands. D. K., after the conveyance to him from Moody,
for some time recognized the rights of complainants to
participate in a redemption, but now denies their rights,
and refuses to confer with them in, regard thereto.
Complainants have each requested D. K. Caldwell to
join with them in a redemption from the mortgage held
by defendant Moody, and he has refused to join with
them, or to negotiate with them in any way. Since the
conveyance from Moody to him, defendant D. K. Cald-
well has collected the rents of all the lands, except lot
No. 5.

The prayer is for "a decree fixing and ascertaining
the total amount due upon said mortgage upon all the
said real estate executed by D. K. Caldwell and wife
to the defendant A. H. Moody, and recorded in the pro-
bate court of Jackson county in Mortgage Book 41, page
377; second, ascertaining and declaring what part of
and how much of said mortgage indebtedness is a charge
upon that part of said real estate included in said mort-
gage, and known as lot No. 5, described in said report
of the commissioners which is Exhibit C hereto, and
which was allotted and assigned to complainant Europe
H. Caldwell; third, fixing and declaring what part and
how much of said mortgage indebtedness is a charge
upon that part of said real estate included in said mort-
gage and known as lot No. 4, allotted and assigned to
the complainant George B. Caldwell, and described in
said report of said commissioners which is marked 'Ex-

hibit C' hereto, commanding and requiring said A. H. Moody, in foreclosing said mortgage, to sell, first, that part of said lands included in said mortgage, and known as lot No. 1, described in said report of the commissioners, which is Exhibit C hereto, and permitting these complainants to pay off and discharge each that part of said debt which is a charge on his part of said real estate; fourth, ascertaining and determining what part and how much of said mortgage indebtedness shall be payable to the defendants T. E. Morgan, C. W. Webb, and William Webb, and these complainants now submit this to this honorable court, and offer to do equity in the payments of said debt, or securing any part thereof which is proper charge against their respective tracts, including in said mortgage, and offer to do whatever may be required by the court in the premises;" and for general relief.

The causes of demurrer noted as overruled are as follows: (1) "There is no equity in the bill." (3) "The bill fails to show that the respondent A. H. Moody was a party to the agreement referred to in section 11 of said bill." (10) "For that complainants' rights, if any, are barred by laches." (12) "For that the bill shows that respondent D. K. Caldwell, as the administrator of the estate of Hamlin Caldwell, deceased, made a final settlement of his administration, and that it was agreed between complainant and said Caldwell that the respective amounts ascertained to be due by complainants, respectively, on said settlement, should be a charge upon that part of the estate respectively allotted to them by the said commission, and the bill fails to show that on said settlement nothing was ascertained to be due by complainants, or either of them, or that such amount so due has been paid." (14) "The bill fails to show that complainants, either of them, before this bill was filed,

[Caldwell, et al. v. Caldwell.]

tendered to said Moody or Caldwell the charges fixed by law for the redemption of said land." (15) "It fails to show payment into court of the charges fixed by law for the redemption of said land, or that before the filing of the bill complainants made any effort to ascertain such charges and offered to pay the same."

MILO MOODY, for appellant. The agreement set out in the bill upon which complainant seeks relief is void under one or both of sub-divs. 1 and 5, sec. 428, Code 1907.—*Jenkins v. Lovelace*, 72 Ala. 303; *Stringfellow v. Ivey*, 73 Ala. 209. Apart from this void agreement, the bill to redeem is without equity as the requirements authorizing redemption has never been complied with, and the complainants have been guilty of laches.—*Bube v. Barton*, 99 Ala. 117; *Beatty v. Brown*, 101 Ala. 695; *Murphree v. Summerlin*, 114 Ala. 54; *Long v. Slade*, 121 Ala. 269. Several of the respondents are shown to be purchasers without notice of any alleged equity of complainant, and the bill is without equity as to them.— *Randolph v. Webb*, 116 Ala. 135; *Hoots v. Williams*, 116 Ala. 372; 5 Cyc. 719.

TALLY & FRICKE, R. W. CLOPTON and S. S. PLEAS-ANTS, for appellee. All persons interested in the premises who would be prejudiced by a foreclosure have a right to redeem, and this includes grantees, assignees, devisees and heirs.—*Butts v. Broughton*, 72 Ala. 294; *Homer v. Boyer*, 89 Ala. 280; *Raney v. McQueen*, 1212 Ala. 191; *Howzer v. Cruickshank*, 122 Ala. 263. When such person redeems, he must redeem from the entire mortgage by paying the entire debt, however small his interest.—*McQueen v. Whetsone*, 127 Ala. 417; s. c. 137 Ala. 417; 121 Ala. 191. Such redemptioner becomes the equitable assignee of the mortgage and may be com-

pelled to permit his co-tenants to redeem their portion. —*Jones v Matkin,* 118 Ala. 348; 3 Pom. Eq. Secs. 1220 to 1222. The equity of the bill does not depend upon the agreement set up in par. 11. That simply gives it additional equity by way of an equitable estoppel.—*Nelson v. Kelly,* 91 Ala. 565; *Goetter v. Norman Bros.,* 107 Ala. 585. The bill has equity outside of the agreement.— Authorities, supra. No laches is shown.—*Caldwell v. Caldwell,* 47 South. 268. If it is necessary that the purchasers have notice the bill sufficiently avers their constructive notice of the condition of the title.—*Truss v. Miller,* 116 Ala. 494; Pomeroy Eq. secs. 630, 626 and 613; *Campbell v. Roach,* 45 Ala. 667; *Thompson v. Sheppard,* 85 Ala. 611; *Corbitt v. Clenny,* 52 Ala. 480; *Dudley et al. v. Witter,* 46 Ala. 664; *Milhouse v. Dunham,* 78 Ala. 48; *Johnson v. Thweat,* 18 Ala. 741.

SIMPSON, J.—The bill in this case was filed by the appellees against the appellants. The material parts of the bill are that the complainants and the respondent, D. K. Caldwell were owners of the lands described in the bill, which lands had been partitioned among them, subject, however, to an outstanding mortgage on the same, which was held by A. H. Moody, one of the respondents; that said mortgage was foreclosed by decree of court, and at the sale under said decree said Moody became the purchaser for the amount of the mortgage debt; that a few days thereafter said Moody conveyed said land to said D. K. Caldwell, and took from him a mortgage on said lands for the purchase money. The bill alleges that, previous to said sale, the complainants had a verbal agreement with said D. K. Caldwell, by which they were to refrain from bidding at said sale, said Caldwell was to purchase the land, and allow complainants five years within which to redeem the land,

that the land was conveyed by said Moody to said D. K. Caldwell on January 20, 1905, and complainants did not know that said D. K. Caldwell had acquired to himself the legal title to the lands, until they discovered the deed on record in the probate judge's office "in the latter part of the summer of 1905," and that said D. K. at first recognized the right of complainants to redeem, but has since denied them said right.

It is acknowledged that said verbal agreement is void under the statute of frauds (Code 1907, § 4289); and section 3412 also provides that "no trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereto in writing." The complainants disavow any attempt to enforce the parol agreement, but insist that, regardless of the parol agreement, the act of said D. K. Caldwell, which it is alleged was the result of a fraudulent agreement between him and said Moody to defeat their right of redemption, amounted in equity to a mere redemption by said D. K. Caldwell, which would inure to the benefit of all the several owners of the lands covered by the mortgage. There is no controversy in regard to the proposition that a redemption by one joint owner inures to the benefit of the other joint owners, who have a right to be let in to redeem by paying their aliquot part of the incumbrance; but, without the aid of the parol agreement, it is difficult to see how this transaction can be held to be a redemption.

It cannot be controverted that, under the decree of sale, the holder of the mortgage could become the purchaser, and thereby acquire title to the land, subject

only to the right of redemption according to law.   When
Moody purchased at the sale under the decree, he ac-
quired said title subject to said right; and when he con-
veyed to Caldwell he conveyed simply the interest held
by him, subject to the same equities, unless the relations
between D. K. Caldwell and the complainants were such
that he could not purchase the property in his own
right.   As above stated, the bill shows that the com-
plainants were apprised of the fact that D. K. Cald-
well had acquired the legal title to himself within less
than a year after the conveyance, so that they had am-
ple time to exercise their right to redeem under the stat-
ute, in place of which they waited five years before filing
this bill.   Pomeroy says:   "There are many instances
in which equity thus compels the owner of land to forego
the benefits of his legal title and to admit the equitable
claims of another, in direct contravention of the literal
requirements of the statute; but they all depend upon
the same principle.   The rule under consideration is
strictly analogous to another familiar rule that a legal
owner of land cannot be turned into a trustee ex delicto
by any mere words or conduct.   A constructive trust
ex delicto can never be impressed upon land as against
the legal title by any verbal stipulation, however defi-
nite, nor by any mere conduct.   Such trust can only
arise where the verbal stipulation and conduct together
amount to fraud in contemplation of equity."   2 Pome-
roy's Eq. Jur. (d Ed.) § 807, p. 1433.   And he further
states that the misrepresentation must be of a fact or
facts, as disinguished from a mere promise.   "A state-
ment concerning future facts would either be a mere ex-
pression of opinion, or would constitute a contract, and
be governed by rules applicable to contracts."   Id. § 808,
pp. 1435, 1436.   Again:   "A statement of intention
merely cannot be a misrepresentation amounting to

fraud, since such a statement is not the affirmation of any external fact, but is, at most, only an assertion that a present mental condition or opinion exists," although "the statement of matter in the future, if affirmed *as a fact,* may amount to a fraudulent representation." Section 877, p. 1561. In the case of *Jones v. Matkin,* 118 Ala. 341, 343, 24 South. 242, in which the opinion of the majority prevailed over the dissent of Coleman, J., and Brickell, C. J., it is stated distinctly that the money was paid "to redeem said real estate."

It cannot be said, then, that there was such fraud in the statements made by D. K. Caldwell as would entitle the complainants to relief. It remains, then, only to consider the question above suggested, to wit: Did D. K. Caldwell occupy such a relation of confidence to the complainants as to preclude him from acquiring title to the entire land, so that any purchase he may have made, either directly or indirectly, under the judicial sale, would necessarily inure to the benefit of the others. It will be noticed that they had all originally occupied the property as tenants in common, having received it from the common ancestor with the mortgage incumbrance on it, but they had made a partition, each owning and occupying a distinct, separate part; but under the facts of this case we hold as to this mortgage they can be considered as being tenants in common, although they had agreed on a partition subject to the mortgage. This court has held that a purchase at tax sale, by one whose duty it is to pay the taxes, operates only as a payment of the taxes.—*Johnston & Seats v. Smith's Adm'r.,* 70 Ala. 108.

It is true that in the present case, while the property was received by the parties subject to the mortgage incumbrance, yet it cannot be said that the debt was the personal obligation of either of the parties, or that he

was under any duty to pay the same. It is stated that, "as a general rule, any person may become a purchaser at a mortgage foreclosure sale who does not stand in such a relation of trust or confidence to the mortgagor as to make his purchase a fraud or breach of duty."—27 Cyc. 1482. Chancellor Kent said: "I will not say, however, that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit. But when two devisees are in possession, under an imperfect title derived from the common ancestor, there would seem naturally and equitably to arise an obligation between them, resulting from their joint claim and community of interests, that one of them should not affect the claim to the prejudice of the other. It is like an expense laid out upon the common subject, by one of the owners, in which case all are entitled to the common benefit."—*Van Horne v. Fonda,* 5 Johns. Ch. (N. Y.) 388, 406, 407. It is true that in that case one of the heirs, who purchased, and the question was whether he bought *as executor,* or not, and the defendant purchased from him, and the court further said: "I have no doubt, therefore, that in a case like the present, and assuming that the evidence warrants us to assume that the deed of May, 1794, was taken by the defendant for trust purposes, that the purchase from Moses Johnson ought in equity to inure for the common benefit."

This court expressed a doubt as to whether one tenant in common would be allowed to set up, as against the others, a title acquired at tax sale (*Howe v. Dew,* 90 Ala. 184, 7 South. 239, 24 Am. St. Rep. 783); and other cases hold that he cannot (*Donner v. Quartermas,* 90 Ala. 164, 169, 170, 8 South. 715, 24 Am. St. Rep. 778; *Bailey's Adm'r. v. Campbell,* 82 Ala. 342, 346, 2 South. 646). The *Van Horne-Fonda Case, supra,* and others, are cited; but we do not find in them any distinct deci-

sion that one tenant in common may not acquire title to the entire tract, by purchase at a judicial sale, under a foreclosure decree. The decisions in other states are not as distinct and harmonious as they might be. In one case where a tenant in common purchased an outstanding mortgage, taking an assignment of it, the court said: "It is then objected that one tenant in common cannot purchase an outstanding title, or incumbrance upon the joint estate, for his exclusive benefit, and assert the same to the prejudice of his cotenant in any way. That principle cannot be properly applied to a purchase of an outstanding mortgage upon the joint estate. Such title may temporarily inure to the benefit of a cotenant who elects to make such a purchase. But it leaves the other party in the full enjoyment of the right of redemption that he previously enjoyed." And it was held that, until the cotenant elected to contribute his share, the title, as assignee of the mortgage, was sufficient to prevent a partition.—*Blodgett et al. v. Hildreth,* 8 Allen (Mass.) 186, 188.

The Supreme Court of Pennsylvania holds that "a conveyance to one of several tenants in common, or a deed to one of two devisees of the same land, shall inure to the benefit of all who came in under the same title and are holding jointly or in common"; the court saying further that, "where several persons have a joint or common interest in an estate, it is not to be tolerated that one shall purchase an incumbrance or an outstanding title and set it up against the rest for the purpose of depriving them of their interests," and, quoting from Chancellor Kent, in the *Van Horne-Fonda Case, supra,* says: "Such a proceeding would be repugnant to a sense of refined and accurate justice, and would be immoral, because it would be against the reciprocal obligations to do nothing to the prejudice of each other's

[Caldwell, et al. v. Caldwell.]

claim, which the relationship of the parties created."—
*Weaver v. Wible,* 25 Pa. 270, 64 Am. Dec. 696, 697.

In a case where one of the heirs of an estate purchased
the land at a foreclosure decree based on a mortgage
made by the ancestor, and had sold a part of the lands,
it was held that a bill was sustainable to require said
purchaser to account for the moneys received by him,
deducting the amount paid out by him, and to estab-
lish titles in the coheirs as to the unused portions of the
land —*Tisdale v. Tisdale,* 2 Sneed [Tenn.] 596, 599, 64
Am. Dec. 775, 777); the court saying: "Tenants in
common by descent are placed in a confidential relation
to each other by operation of law as to the joint proper-
ty, and the same duties are imposed as if a joint trust
were created, by contract between them, or the act of a
third party." Upon the same principle, where one of
the tenants in common acquired a patent from the gov-
ernment, it was held to inure to all of the tenants in
common.—*Roberts v. Thorn,* 25 Tex. 728, 78 Am. Dec.
552, 554. And the like result was held where one tenant
in common purchased the lands, at a sheriff's sale, un-
der execution on a judgment against all.—*Gibson v.
Winslow,* 46 Pa. 380, 84 Am. Dec. 552.

While these cases may be differentiated from the one
now under consideration, in some particulars, yet all
hold-that, under the broad equitable principle laid down
by the great chancellor in the *Van Horne-Fonda Case,*
there is a confidential relation existing between tenants
in common, by which a purchase such as is shown in
this case entitles the other tenants in common, within a
reasonable time, to demand that the purchase inure to
their benefit, on their contributing their proportion.

We hold that under the circumstances of this case
the complainants were not guilty of such laches as to de-
prive them of this remedy, but if, before they elected to

demand that the purchase inure to their benefit, any parts of the lands had been sold to bona fide purchasers, their remedy is to require D. K. Caldwell to account for the money received, and not to dispossess such purchasers. From what has been said, it results that the bill has equity, though some of the causes of demurrers should have been sustained.

The decree will be corrected, so as to overrule causes 1, 3, 10, 12, 14 and 15, of the demurrer, and to sustain the remaining causes; and, as corrected, the decree of the court is affirmed.

Corrected and affirmed.

ANDERSON, SAYRE and SOMMERVILLE, JJ., concur.