# Caldwell, *et al.* v. Caldwell, *et al.*

(Two cases.)

*Bill for Contribution and Redemption.*

(Decided June 17, 1913.  62 South. 951.)

1. *Mortgages; Foreclosure; Redemption.*—Where an heir acquired an interest in lands of his ancestor subject to mortgage and adverse to his co-heirs, under such circumstances that the title thus acquired inured to the benefit of the co-heirs, a bill praying that the court apportion to each of the heirs the amount which each should contribute for the redemption of the land from the mortgage, with reference to a contract of partition between the heirs, is a bill to redeem the entire tract, and not objectionable as a bill to redeem a fractional part.

2. *Same; Real Property; Action Against Heirs; Cross Bill.*—Where the action was by the other heirs to have the court determine the amount to be contributed by each to redeem the land from the mortgage, with interest, a cross bill by the administrator insisting that the lien be considered in determining that question, contains equity relative to the subject of the original bill, to prevent further litigation, and accounts will be stated between the heirs for the liens not exceeding the value of the land received by each under the contract of partition.

3. *Executors and Administrators; Accounting; Agreement by Heirs; Construction.*—Where an agreement between heirs provided that the administrator should make a final settlement without taking account of the lands formerly belonging to the estate, nor of the rents due therefrom except for two specified years, and no account of the debts charged upon that land; further providing that the administrator should charge each heir with the amount of rents received by him, and credit himself with the amount disbursed from moneys received from the estate otherwise than the proceeds of the land, but that no debt due from anyone of the heirs to the estate should be charged against any of the interest which the heirs might have in the assets of the estate, and providing for a voluntary partition of

the land, and that the amount found due from each heir on the settlement of the estate should constitute a lien on the land set apart to such heir; the plain terms of the first two paragraphs will be construed to relieve the administrator as such of any obligation in respect to the individual indebtedness of the heir, and to prevent a setting up of such indebtedness as against the distributive share in the other property, aside from the land, but not to extinguish the lien against the land, in order to give effect to the plain terms of the last paragraph of the agreement.

4. *Limitation of Action; Enforcement of Lien on Real Property.*— Under the agreement in this case, where the other heirs sought a decree determining the amount each should be required to contribute to redeem the land from the mortgage, a cross bill by the administrator seeking to have the indebtedness of the heirs considered in determining the amount of such constribution, was the assertion of the lien upon the land created by the agreement, and not a right to recover upon the indebtedness, and was therefore not barred in less than twenty years from the time that amount of indebtedness was determined.

5. *Descent and Distribution; Heir's Action; Lien; Laches.*—Where the heirs waited fourteen years before attempting to enforce their lien under the agreement in this case, but there had been no adverse assertion of rights or prejudicial delay, and the heirs owed no indebtedness, such lien was not concluded by laches.

6. *Same.*—Where the other debts against the estate had been paid or were barred, each heir might assert his right to the beneficial interest in one-fourth of the liens created by the agreement, without recourse to an action through the personal representative of the ancestor.

7. *Same; Contract Between Heirs; Construction.*—Under the agreement in this case the decree erroneously charged one of the heirs, other than the administrator, with the rent of part of the land for certain years, not specified in the agreement.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by G. B. Caldwell and another against D. K. Caldwell and another, for a decree determining the shares which the several parties should contribute for the redemption of certain lands from a mortgage. From the decree of the chancellor, both parties appeal. Reversed and remanded on both the main and cross-appeals.

See, also, 5 Ala. App. 428, 59 South. 711.

The agreement, with the exception of the fifth section, alleged to have been entered into between the

parties, is as follows: "This agreement made and entered into by and between D. K. Caldwell, S. Almena Caldwell, George B. Caldwell, and Europe H. Caldwell, witnesseth: (1) D. K. Caldwell shall make a final settlement of the estate of Hamlin Caldwell, deceased, taking no account of the land formerly belonging to said estate, nor the rents due from the said land except for the years 1895 and 1896, and likewise taking no account of the debts which are charged upon said land covered by the Butler mortgage debt, etc. (2) That said D. K. Caldwell shall account for the rents for the years 1895-96, and charge each heir with the amount of rents received by him as so much advanced and paid to the heirs so receiving said portion of rents, crediting himself with the amount disbursed by him, if anything, out of his individual means or moneys received from said estate otherwise than above excepted as the proceeds of the land, and that he shall likewise charge each heir on said settlement any advancement by Caldwell to said heir; but no debt that may be due from any one of said heirs to the estate of Hamlin Caldwell shall be charged as against any interest which said heir may have in the assets of said estate, or which may have been or may hereafter be derived directly or indirectly from the land formerly belonging to the estate of Hamlin Caldwell, which was sold and conveyed by J. E. Butler to Sallie B. Brown. (3) It is further agreed that W. B. Bridges shall select one man, or three men, as he may think best, to value all the real estate formerly owned by Hamlin Caldwell, and which was conveyed by J. E. Butler to Sallie B. Brown, and to value each lot or tract separately, and that the man or men so appointed shall take from the whole tract or from the different tracts or parcels of tracts an amount of land sufficient in value, which according to their

best judgment will be sufficient in three years from the date of this agreement to yield the amount which may be necessary to pay the debt to Sallie B. Brown and repurchase said land. Said land to be selected so as to cause the least detriment to the whole tract, which said land when so set apart to pay said debt, shall be placed in the custody of the trustee to be by him managed and so sold at any time within three years, and out of the proceeds pay said Sallie B. Brown the debt or so much thereof as the proceeds of the land will pay. Said trustee shall likewise manage and control said land, and receive said rents and pay the same to Sallie B. Brown to be credited on said debt, up to the time when the same shall be sold. It shall be the duty of said trustee in making said sale to price to each of the four heirs therein named all the prices offered for said land, and give the persons herein named opportunity to take the land at the prices offered, but should either one of them be willing to pay more than the price offered, the same shall be entitled to it, providing satisfactory arrangements for the payments are made in regard to it. Said trustee is hereby authorized to sell said land publicly or privately as he may deem best, provided he gives a notice as herein provided and the opportunity to take said bid, and we each agree to sign a conveyance to such person or persons as the trustee may sell the land to at the price agreed on by him. (4) Of the land remaining after said sale has been made to pay said debt; the remainder shall be divided into four parts, each part of which shall be (valued by said appraisers aforesaid and each of the said four heirs shall be) entitled to one of the parts so set apart and shall have that portion as their part which may be designated by said appraisers if said heirs shall be unable to agree upon their respective parts so set apart; but each heir shall take

said one-fourth portion of said land charged with whatever balance may be ascertained to be due on the settlement of D. K. Caldwell in the probate court from prior advancements or paid him from said estate, and the same shall be subject to said debt before the title shall vest in him or her, but the whole shall be subject to the prior debt due Sallie B. Brown.   *   *   * (6) If the amount paid aforesaid shall not be sufficient to pay the same, then said trustees may take a portion of the land off of each of the divisions hereinbefore stated as nearly equal as may be convenient, and sell the same until an amount sufficient has been realized to pay the debt of Sallie B. Brown. The amount found due on the settlement of D. K. Caldwell in said probate court, due from each heir of the estate is hereby declared a lien and charge on the interest set apart to such heir, and in default of payment, said interest may be sold, and the amount remaining after paying said debt shall go to the heir aforesaid." Signed by each of the parties above named, on the 8th day of February, 1897.

MILO MOODY and W. H. NORWOOD, for appellant. Some of the history of this case may be found in the case reported in 121 Ala. 598. While appellants insist that complainants had no legal or equitable right to redeem yet having redeemed or having sought to do so, there should be an accounting to ascertain the sum of money that each respectively owe the estate that it may be known just how much each of them ought in equity and justice to contribute.—*McCurdy v. Streety,* 104 Ala. 493; *Comer v. Sheehee,* 129 Ala. 588; *Nelson v. Murphy,* 69 Ala. 598; *Brown v. Lang,* 14 Ala. 719; *Goodman v. Benham,* 16 Ala. 625. The chancellor erred in sustaining demurrers to the cross bill and in dismiss-

ing the same because of limitations or laches.—*Noble v. Tate,* 37 South. 278. The award stood as the judgment of the court.—Sec. 2922, Code 1907. There was no laches or staleness of demand.—*Haney v. Legg,* 129 Ala. 625. Equitable liens are enforceable in a court of equity.—*Ross v. Perry,* 105 Ala. 533. Such liens are not lost by reducing the claim to judgment.—*Caldwell v. Smith,* 77 Ala. 168; *Pritchett v. Sibert,* 75 Ala. 315; *Robinson v. Pebworth,* 71 Ala. 240; see generally former appeal in this case in 55 South. 515.

TALLEY & FRICKS, and S. S. PLEASANTS, for appellee. Some of the matters of complaint have been adjudicated on former appeal.—*Caldwell v. Caldwell,* 55 South. 515; s. c. 121 Ala. 598. The probate court ascertained that the indebtedness of appellees was in excess of the distributive share and excluded them from participating in distribution on final settlement.—Authorities supra; sec. 240, Code 1896. The original claim was extinguished by the award, and a suit should have been based on the award.—2 A. & E. Enc. of Law, 798; 3 Enc. P. & P. 129 Ala. 131. Equity will not interfere in such matters where the party seeking its aid has been guilty of gross laches or long voluntary delay.—Sec. 3091, Code 1907; *Thompson v. Parker,* 68 Ala. 387.

McCLELLAN, J.—Hamlin Caldwell died September 3, 1895. Four heirs survived him, viz., G. B. and E. H. Caldwell (complainants) and D. K. and S. Almena Caldwell (respondents). Decedent was a large landowner. He was indebted to J. E. Butler, to whom he had executed two mortgages on lands described in this bill. On December 28, 1896, Butler assigned these mortgages to Sallie B. Brown, and also made to her a quitclaim to the land described in them. On November

21, 1898, Sallie B. Brown assigned the mortgage and executed an appropriate quitclaim to A. H. Moody (respondent). D. K. Caldwell was constituted the administrator of his father's estate on September 26, 1895. On February 8, 1897, the heirs of Hamlin Caldwell executed an agreement. The report of the appeal will contain it, omitting the fifth section and the formal parts thereof, not important on the present review. Under this agreement the lands were divided, and each party took possession of the part so allotted; and the lot (1), from the proceeds of which it was contemplated the debts would be paid, was likewise set apart. On June 18, 1896, pursuant to agreement theretofore entered into by all the heirs (except S. Almena, who was not indebted in any form to Hamlin Caldwell or his estate), W. H. Norwood, as an arbitrator, ascertained and reported the respective indebtedness of G. B., E. H., and D. K. Caldwell to the Hamlin Caldwell estate. This award was affirmed to be binding on the parties. —*Caldwell v. Caldwell*, 121 Ala. 598, 25 South. 825. However, it was also therein ruled that the probate court was without power to further adjudge, in the premises afforded by the award, than that the indebtedness of an heir to the estate was equal or exceeded the distributive share of such heir in the estate. Repetition of the particular facts set forth in the report in 121 Ala. 598, 25 South. 825, is not necessary. Reference thereto will suffice.

On October 11, 1902, Aultman Company, a creditor of the Hamlin Caldwell estate, filed a bill with the ultimate purpose of collecting its claim. The heirs and A. H. Moody were made parties thereto. A consent decree was entered October 22, 1904, whereby a sale of the lands for satisfaction of the Moody and Aultman Company debts was ordered, and later had. At this

sale Moody bid the agreed sum of $16,000, covering the debts and costs, and took conveyance of the land. In May, 1905, Moody, for the same consideration bid by him, conveyed all the lands to D. K. Caldwell, taking a mortgage back thereon for that sum. On a former appeal in this cause (173 Ala. 216, 55 South. 515), where a further report of the facts and of the nature of this bill is made, it was ruled, in effect, that the reconveyance by Moody to D. K. Caldwell revived the relation of cotenancy existing between Hamlin Caldwell's heirs before the sale under the mentioned consent decree, that, if the other heirs so elected (D. K. early purchased the rights of Almena in the lands), they were entitled to redeem from A. H. Moody under the D. K. Caldwell mortgage, and, further, that the complainants had not so delayed as to be barred by *laches*. The conclusion that the cotenants were entitled to redeem was predicated of the relation, and not of the agreement alleged in the bill, viz., that Moody would buy at the sale under the said agreed decree, and the heirs would be allowed a definite number of years to redeem or repurchase the lands so sold. We are not now disposed to disturb the stated rulings on former appeal.

While the amended bill invokes the court's powers to ascertain, as between G. B., E. H., and D. K. Caldwell, the respective proportion each should contribute to ultimately effect redemption of the lot, which was assigned to him under the agreement before mentioned, yet the predominating prayer, in respect of redemption, is that the redemption should be of the whole land from Moody, the mortgagee. There is no proposal to only redeem a part of the land *from Moody*. The entire consequence of the amended bill's reference to the several lots assigned, under the agreement, to the heirs was to apportion, or to afford opportunity to apportion, the

aggregate of the D. K. Caldwell mortgage debt to Moody among the heirs in the proportion they should each contribute to effect a single, completed redemption. Hence the amended bill does not offend the rule, reiterated in *McQueen v. Whetstone,* 127 Ala. 417, 30 South. 548, that fractional redemption of lands covered by a mortgage is not allowable.

The agreement of February 8, 1897, as we construe it, imposed upon the respective lots assigned thereunder to G. B., E. H., and D. K. Caldwell a contract "lien and charge" to assure (if of course the indebtedness of Hamlin Caldwell's estate was discharged) the payment of the individual debt of each of said heirs to the estate of Hamlin Caldwell. The last paragraph of the agreement of February 8, 1897, removes all doubt on this score. It is plain, unequivocal. The evident intent of the *first* and *second* sections of this agreement was to relieve the administrator as such (D. K. Caldwell) of any obligation in respect of such individual indebtedness of the heirs, and to eliminate such indebtednesses from any effect to toll or extinguish the distributive shares of each, respectively, in the "assets of said estate" other than the lands which, except as to certain rents, were lifted out of the administration. If the agreement was interpreted as having no reference to that individual indebtedness, the result would be, clearly, to strike therefrom the last paragraph in section 6 thereof, a provision that is too plain to be mistaken. It is not to be supposed that parties intend to incorporate in written agreements contradictory provisions. The construction stated above averts the possibility of such a result, and in so doing the language of the instrument is in no wise departed from, nor an intent supplied where none was expressed.

While concluding that the probate court was without jurisdiction to render a personal judgment for the excess of an indebtedness of an heir or distributee to the estate over the distributive share to which such heir is entitled, this court in *Caldwell v. Caldwell,* 121 Ala. 598, 25 South. 825, affirmed as stated before, the binding quality of the *award,* closing the opinion with this expression: "* * * Upon this award the court could have properly ascertained the amount of appellant's (E. H. Caldwell) indebtedness to his father's estate to be the sum named in the decree." The award of June 18, 1896, which passed into the probate decree considered in *Caldwell v. Caldwell,* 121 Ala. 598, 25 South. 825, found the three heirs indebted to the estate in these respective sums: D. K. Caldwell, $1,827.74; G. B. Caldwell, $3,122.02, and E. H. Caldwell $27,528.-55. By his amended answer, which was constituted a cross-bill for the purpose to be stated, D. K. and Almena Caldwell sought to have the said indebtedness of the complainants (G. B. and E. H. Caldwell) reckoned with in ascertaining the amount, *as between the heirs,* each should contribute to effect the redemption sought by the amended original bill. The view prevailed that at best the statute of limitations of 10 years barred the remedy the amended cross-bill would, in this relation, have asserted. Approximately 14 years elapsed between the rendition of the award and the filing of the amended cross-bill. The object of the amended cross-bill was to interpose, *as between the heirs,* and upon the adjustment the amended original bill invoked in respect of the pro rata sum each should contribute to the redemption from Moody, the lien established by the agreement of February 8, 1897, upon the respective lots of the land assigned thereunder to each heir; and *not* the assertion of a right of recovery

upon the indebtednesses, confessedly not paid, the complainants owed the Hamlin Caldwell estate. Hence, short of 20 years the remedy sought by the amended cross-bill was not barred.—*Ware v. Curry,* 67 Ala. 274, 283, et seq. It need hardly be added that the relief sought by the amended cross-bill was not based upon the *award,* though that pronouncement, in respect of the individual indebtednesses, afforded the ascertainment of the respective sums due by three of the heirs (the other being unindebted to the estate), and thus operated to establish the amounts for the discharge of which the respective liens, created by the last paragraph of the agreement of February 8, 1897, should furnish security. We can see no basis for an imputation of concluding *laches* to D. K. and Almena Caldwell, or either of them. There has been no adverse assertion of rights or attendant *prejudicial* delay.—*Haney v. Legg,* 129 Ala. 625, 30 South. 34, 87 Am. St. Rep. 81.

From the amended cross-bill it appears that the estate of Hamlin Caldwell was finally settled in the probate court during the year 1897. It is to be assumed that all debts against that estate of Hamlin Caldwell, other than the indebtedness which entered into the sum ($16,000) bid by Moody at the chancery sale have been either paid or have become barred before the amended cross-bill was filed. Under these circumstances the unqualified beneficial right to the respective lien created by the agreement of 1897 to secure the indebtedness established by the award is with the heirs of the decedent in proportions of one-fourth each; and, consistent with the doctrine of *Noble v. Tate,* 119 Ala. 399, 24 South. 438; s. c. 140 Ala. 469, 37 South. 278; one, an heir, so entitled may appropriately assert his right without recourse to an action or actions through a personal representative.

[Caldwell, et al. v. Caldwell, et al.]

The amended cross-bill asserted, it seems to us, manifest equity. The recognition and effectuation of this equity in this cause, to the subject of which it is so intimately related, will facilitate the final adjustment of the rights of the parties and prevent further litigation, which must result if the enforcement of the *lien* each heir has upon the allotment of land to each of the others is relegated to a distinct proceeding in a court of equity. No injustice can attend the process. The accounts should be stated between the lienholders in the proportion of one-fourth to each and of three-fourths against each. Since it appears that the indebtedness of D. K. Caldwell is less than that of either G. B. or E. H. Caldwell, and that Almena Caldwell was without indebtedness to the estate, the contribution, for redemption, by each complainant should be tolled by his respective one-fourth interest in the amount due from D. K. Caldwell; and, to accomplish the proper relief, the right of each complainant to contribute to and effectuate the redemption should be conditional upon satisfaction, by each complainant, of the proportionate pecuniary interest D. K. has in the *lien* created by the agreement of February 8, 1897, on the land allotted to the complainants, respectively, but limited in amount to the value of the land, when the agreement was made (February 8, 1897), so allotted to each of complainants.

According to the terms of the agreement of February 8, 1897, the charges for *rents* were restricted to two years, therein stated. Our opinion is the chancellor erred in charging G. B. Caldwell with the amount of the rents of the "home place" from 1897 to 1912. The agreement contemplated that the rents of "1895 and 1896" should be charged up and disposed of in the final settlement of the administration in the probate court. Accordingly it does not appear that the rents or use of

the "home place" should have effect in *this* accounting.

Otherwise than indicated in this opinion, no fault appears in the decree appealed from. It therefore is reversed to the end only that an accounting may be had between the heirs consistent with the conclusions hereinabove set down. The cause is remanded. The costs of the appeal will be equally apportioned between the appellants and the cross-appellants.

Reversed and remanded, on both the main and cross-appeals.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.