# CHARLESTON.

A. D. PRESTON *v.* FRED DIXON, JR., *et als.*

Submitted November 8, 1921.   Decided November 15, 1921.

1.  JOINT TENANCY—*Where Joint Tenant Redeems From Judicial Sale, Others May Redeem Their Interest by Paying Proper Part of Purchase Price.*

    A purchase of the common property by one joint tenant at a judicial sale made to satisfy a lien against such property for which all of the joint tenants are bound, is for the benefit of all, and each may redeem his interest in the property by paying his proper proportion of the purchase price.   (p. 544).

2.  SAME—*Where Joint Tenant, on Assignment of Vendor's Lien, Sues and Purchases Land Under Execution, the Other May Redeem.*

    Where one of the joint owners of a tract of land, subject to a vendor's lien which both of such owners are under obligation

.to discharge, pays off such lien, and takes an assignment of the same to himself, and brings a suit in his own name as assignee of the vendor to subject the whole of the common property to sale in satisfaction of such lien, and at a sale decreed in such suit becomes the purchaser of such property,. he will be held to have made the purchase for the common benefit, and his co-owner may redeem his interest in such land by paying his proper proportion of the purchase money. (p. 545).

3.   SAME—*Where Joint Tenant Sells Part of Common Property Purchased at Judicial Sale to Bona Fide Purchaser, Such Tenant Must Account to Co-Owner for Price.*

Where in such case the joint tenant, who purchased at the judicial sale, sells a part of such common property to a *bona fide* purchaser before any proceeding is instituted by the other interested party for the purpose of redeeming his interest therein, such purchaser will be protected, but such co-owner will be compelled to account for the purchase money so received by him. (p. 547).

Appeal from Circuit Court, Greenbrier County.

Suit by A. D. Preston against Fred Dixon, Jr., and others. Decree for the defendants, and the plaintiff appeals.

*Affirmed.*

*T. N. Read,* and *Price & McWhorter,* for appellant.
*Dillon & Nuckolls,* for appellees.

RITZ, PRESIDENT:

Plaintiff by this appeal seeks to reverse a decree of the circuit court of Greenbrier county which set aside a sale made to him of certain lands belonging to the plaintiff and the defendant jointly, and decreed that the defendant might have his interest in said lands upon payment of his proportion of the purchase money paid therefor by the plaintiff.

On the 14th day of December, 1908, the plaintiff and one Samuel Dixon purchased from S. T. Hedrick a tract of 225.41 acres of land lying in Greenbrier county, at the price of $5635.25.    Of this sum $2254.10 was paid in cash, and for the residue two notes were given for the sum of $1690.57 each, payable in one and two years from date, with interest, and secured by a vendor's lien in the deed of conveyance from Hedrick to Dixon and Preston.·   At or about the same time

the parties also purchased another small tract of land lying near the above tract for the sum of $200.00, all of which was paid in cash, and the title to which was taken in the name of the plaintiff A. D. Preston, for the benefit, however, of both parties. It appears that the purpose of the parties in purchasing these lands was to operate them for the purpose of manufacturing cement, or else sell them for the purpose of such operation. Nothing was ever done, however, in furtherance of this purpose. On the 19th of June, 1911, Samuel Dixon conveyed his one-half interest in the 225.41 acre tract of land to his son Fred Dixon, Jr., reciting in said deed a consideration of $2500.00. After the purchase of this land by Preston and Dixon an arrangement was made with the former owner by which he remained on the land and paid rent therefor, the rent being credited upon the interest accruing upon the deferred purchase money notes, and being insufficient at any time to entirely discharge such interest. The two deferred purchase money notes were not paid by Dixon and Preston, and in the fall of 1916 some correspondence was had between Fred Dixon and his father Samuel Dixon on the one hand, and Preston on the other, in regard to the payment of these notes. It appears that Preston paid off the notes to Hedrick on the 7th of December, 1916, and then wrote to Fred Dixon advising him that he, Preston, had been called upon to discharge the notes, and that he had done so, and demanding of Dixon that he pay his one-half of the amount necessary therefor, and enclosed a statement showing this amount to be $2044.47, which included one-half of certain taxes paid in addition to the one-half of the deferred purchase money notes. This communication was answered by Samuel Dixon in which reply Preston was advised to draw a draft for the amount upon Fred Dixon through the American National Bank of Washington, D. C., attaching thereto the notes and tax tickets, and the same would be paid. Preston made no reply to this letter, nor did he draw the draft as requested, his excuse being that he did not want to part with the tax tickets and the paid notes. He made no further effort to collect the amount from Fred Dixon, nor did he make any further demand upon him that he pay the same.

At the time Preston paid off these notes he took a deed of assignment from the holder of the vendor's lien by which the same was transferred, set over, and assigned to him, together with the notes secured thereby.    On the 12th of February, 1917, Preston then brought a suit for the purpose of enforcing the vendor's lien assigned to him by the holder thereof, Hedrick, against the whole tract of land, and asked for a sale of the whole tract of land in satisfaction of the lien so assigned to him.    At the time he brought this suit he wrote a letter to Samuel Dixon enclosing a copy of the process, and asked him to have it accepted by his son Fred Dixon. To this letter Samuel Dixon replied declining to accept service of process, or to have it served on his son, and further advised that there was no necessity for the institution of any suit, and calling the attention of Preston to his former letter asking him to draw a draft for the amount  through the American National Bank of Washington, D. C., and again advising him that if he would draw such draft the same would be paid.    Preston paid no attention to this, but had an order of publication posted and published against Fred Dixon, and proceeded with the cause.    On the 17th of April, 1917, a decree was entered granting the relief asked for by the plaintiff.    This decree found that the plaintiff was entitled to recover the amount of the vendor's lien, adjudicated that the same was a lien upon the 225.41-acre tract of land, and decreed said tract of land to be sold in satisfaction of said lien, and further provided that the proceeds of such sale should be applied:   first, to the payment of costs of suit and expenses of sale; second, to the payment of plaintiff's lien, with legal interest; and, third, that any residue should be divided equally between the plaintiff A. D. Preston and the defendant Fred Dixon, Jr.    The term of the court at which this decree was entered adjourned on the 19th of April, two days after its entry.    The sale provided for in the decree was made on the 26th of May, 1917, and at this sale Preston became the purchaser of the land for the sum of $5635.25, the exact amount of the original purchase price paid by him and Samuel Dixon therefor.    This sale was confirmed on the 26th of June, 1917, and in that decree credit is given Preston for the

amount of the vendor's lien upon the purchase price of the property, which left a balance of $1511.05. This amount he paid, and out of it the costs of suit and expenses of sale were paid, and the residue, $1365.83, in accordance with the provisions of the decree of April 17, 1917, was divided, and one-half thereof paid to Preston, and a check for the other one-half thereof sent to Fred Dixon, Jr., by registered mail. This check was received by Fred Dixon and held by him until the filing of this proceeding to set aside the sale, but was never used, and in fact is filed with his petition herein. The special commissioner who made the sale at which Preston became the purchaser made a deed conveying the land to Preston, and shortly thereafter Preston sold 100 acres off of the tract to a man by the name of A. A. Scott for the sum of $4000.00, leaving remaining 125.41 acres.

On the 16th day of May, 1919, Fred Dixon filed his petition in which he asked that the decree of sale and the deed to Preston, above referred to, be set aside, or that the same be held to be for his benefit, as well as the benefit of Preston. Preston insisted that Dixon was not entitled to file this petition because the same was not tendered within two years from the entry of the decree complained of.    In addition to desiring to redeem his one-half interest in the 225.41-acre tract, Dixon in his pleadings attempted to have the legal title for the small tract of about 10 acres abstracted from Preston to the extent that he, Dixon, was the owner thereof. Dixon also asked that the sale made by Preston to Scott of the 100 acres, for $4000.00, be set aside.    The circuit court held that Dixon was not entitled to have the interest of the parties in the small tract of 10 acres determined in this proceeding, and declined that relief.    He also declined to set aside the deed made by Preston to Scott for the 100 acres, holding that Scott was protected under § 8 of ch. 132 of the Code, but held that Dixon was entitled to the benefit of the sale, and that Preston must account to him for one-half of the purchase money received from Scott, and further held that Dixon was entitled to redeem his half interest in the remaining 125.41 acres by paying to Preston one-half of the amount paid

by Preston to the original vendor, as well as one-half of any taxes or other proper expenses which Preston had paid.

Preston contends that the court erred in allowing Dixon to attack the sale made by the commissioner at which he became the purchaser of the land, for the reason that it was more than two years from the entry of the decree until the filing of the pleading attacking the same, and that because of this lapse of time said decree could not be attacked by Dixon under the provisions of § 14 of ch. 124 of the Code; and, further, that even though the attack on the decree was made in time, still no error has been shown therein; while Dixon contends that the two-year period of limitations provided by the statute relied upon does not begin to run from the entry of the decree of sale, but only from the entry of the decree confirming the same, his contention being that the decree of sale was not a final decree; and, further, that even though two years had expired, that would not prevent him from bringing the suit to redeem his interest under the facts shown to exist in this case; that he and Preston being cotenants in the property, the purchase by Preston at a sale made under a lien against the whole property was nothing more than a redemption by Preston from the lien, and that he is entitled to have the benefit of such redemption upon paying his one-half of the costs thereof, which he offers to do. Dixon also assigns as cross error the refusal of the court to set aside the sale made to Scott of the 100 acres, and also the refusal of the court to determine the rights of himself and Preston in the small 10-acre tract, the legal title to which is held by Preston admittedly as a trustee for himself and Samuel Dixon.

It is very well established that a cotenant in dealing with common property must exercise the utmost good faith toward those jointly interested with him. If there is an encumbrance upon the property which all of the cotenants are obligated to pay, the discharge of it by one cotenant is simply a redemption for the benefit of all, upon the others paying their proper share; and it has likewise been repeatedly held that where the common property is sold, either under a decree of court, or under a deed of trust given to secure a debt

which all of the common owners are obligated for, and is purchased by one of the cotenants at such sale, such purchase amounts to no more than a redemption of the joint property, and inures to the benefit of all of the cotenants, should they desire to take advantage thereof by paying their proper proportion of the indebtedness.    Freeman on Cotenancy and Partition, §151; *Weaver* v. *Akin,* 48 W. Va. 456; *Reed* v. *Bachman,* 61 W. Va. 452; *Goodloe* v. *Woods,* 115 Va. 540; *Roberts* v. *Thorne,* 25 Texas 728; *McLaughlin* v. *The Estate of Curts,* 27 Wis. 644; *Titsworth* v. *Stout,* 49 Ill. 78; *Moon* v. *Jennings,* 119 Ind. 130; *Nalle* v. *Parks,* 173 Mo. 616; *Mahoney* v. *Nevins,* 190 Mo. 360; *Caldwell* v. *Caldwell,* 173 Ala. 216; *Tisdale* v. *Tisdale,* 2 Sneed 596, 64 Am. Dec. 775.

What was the effect of the purchase made by Preston at the special commissioner's sale?    It must be borne in mind that when he discharged the vendor's lien, he took a regular deed assigning the same to himself.    He did not rely upon the equitable lien which would arise in his favor against Dixon's half of the land for one-half of the money paid by him.    He did not bring a suit to subject Dixon's one-half of the land to the satisfaction of this equitable lien, but he did bring a suit as holder of the vendor's lien to subject the whole of the land, and to have sale of the whole of the tract in satisfaction of the lien against it.    This suit could have no different effect than if it had been brought by Hedrick, the original owner of the vendor's lien.    Preston stepped into Hedrick's shoes by reason of the assignment to him by Hedrick, and the suit was brought to enforce that lien against the whole tract of land, and the decree was for the sale of the whole tract of land in satisfaction of the lien.    Now it is quite well settled that if Hedrick had brought exactly the same kind of suit which was brought by Preston as his assignee, and a joint tenant had purchased the common property at a sale made in such suit, such a purchase would have been for the common benefit, and could be taken advantage of by any of the cotenants upon paying their proper proportion of the purchase price.    But could Preston give the proceeding a different color beause he was enforcing the lien as Hedrick's assignee?    Can it be said that the assignment and

transfer of the notes to him, and of the vendor's lien secur-
ing them, would add anything to a suit brought by him to
enforce that lein against the whole tract of land that would
not have attached to such a suit had it been brought by his
assignor? If the suit had been brought by his assignor and
at a sale the land purchased by a stranger, then, of course,
no complaint could be made by Dixon; and so in this case, if
the land had been bought at the sale by a stranger neither
of the parties could complain. Manifestly the court had
jurisdiction to enforce the lien. Preston could, however,
have brought a suit seeking to subject only the interest of
Dixon to the satisfaction of his equitable lien for the amount
which he had paid in discharge of notes that Dixon should
have paid. This suit, however, would not have been a suit
to enforce a vendor's lien. The common property would
not have been involved in the suit as such. It would have
been a suit only involving the undivided interest of Dixon,
and the vendor's lien against the whole tract of land would
not have been involved, but only the establishment of Pres-
ton's equitable lien against Dixon's half, and the procure-
ment of satisfaction thereof by a sale of that interest. Pres-
ton, however, treated himself as a purchaser of the vendor's
lien and took an assignment thereof. In this way he ac-
quired an incumbrance against the joint estate and under
the doctrine of the above authorities such acquisition was for
the common benefit. When he brought the suit to enforce this
lien, he was acting for both himself and Dixon, for the pur-
chase of the lien by him was for the benefit of both, and he
could not, by bringing a suit to enforce it, exclude Dixon from
the benefits arising from such enforcement. What were
these benefits? Nothing less than the procurement of a sale
of the land, and when Preston became the purchaser at the
sale in the absence of outside bidders, he became such for the
purpose of protecting the property in which they were both
interested. Preston stands in no different position than if
the suit to enforce the vendor's lien had been brought by his
assignor and he had become the purchaser at a sale made in
such a suit, in which event it is quite clear from the authori-
ties that his co-owner would be entitled, upon paying his pro-

portion of the purchase price, to have his original interest in the subject matter of the purchase, provided, always, such a condition had not arisen as to destroy his rights.    No such condition is shown to have existed here.    We are, therefore, of opinion that Dixon was entitled to maintain a bill to redeem his half interest in the land.

It may be said, however, that Dixon did not file such a bill; that he filed a petition and answer and cross bill apparently in the original suit brought by Preston to enforce the vendor's lien for the purpose of opening up that proceeding, and having relief therein.    It is true that the pleadings filed were attempted to be filed in that suit.    Their allegations, however, are sufficient for a bill to redeem the interest of Dixon, and to revest the title thereto in him.    Process was duly served upon Preston and upon Scott, the purchaser of the 100 acres, and full defense was made thereto, and there is no reason why the court may not treat these pleadings as an original bill, and grant the relief to which Dixon has shown himself entitled.

A great deal of argument is indulged in by the parties as to whether or not Dixon's petition and answer and cross bill were filed in time to open up the decree of sale.    In view of the conclusion we have reached, this is entirely immaterial.    Dixon's right to redeem does not depend upon opening up the vendor's lien suit.    The purchase made by Preston in that suit amounted to nothing more than a redemption of the land for the common benefit, and Dixon is entitled to redeem his interest from Preston so long as he is not barred of that right in some of the ways provided by law.

Did the court err in refusing to set aside the sale by Preston of the 100 acres to Scott?    Scott claims to be protected as a purchaser under the provisions of § 8 of ch. 132 of the Code, while Dixon contends that Scott was required to take notice of everything of which the record would have informed him.    The court in the vendor's lien suit undoubtedly had jurisdiction of the subject matter and of the parties.    Its decrees entered in that suit were not void.    The purchase by Preston made in that suit was interpreted by the court as being for his exclusive benefit.    But does that fact deprive

Scott of his title to the 100 acres? This purchase was made by Scott after Preston's title was complete, and there was no proceeding pending to reverse or correct the decree entered by the circuit court in the vendor's lien suit. It matters not that Scott did not purchase directly from the special commissioner. Under our holdings he is protected under the provisions of § 8 of ch. 132 of the Code when he purchases from a party to the suit to the same extent as though he had been a purchaser at the judicial sale. *Chapman* v. *Branch,* 72 W. Va. 54.

Nor did the court err in refusing to take cognizance of the interests of the parties in the 10-acre tract referred to in the pleadings. Their interests in this tract were entirely separate and distinct from their interests in the 225.41-acre tract. In fact, it does not appear that Fred Dixon has any interest in the 10-acre tract, or had such an interest at the time of the institution of the suit, or at the time he filed this proceeding to redeem his interest in the other tract. It involved a controversy, if indeed there is any conflict between the parties in regard to it, entirely dissociated with the matters involved here and likely between different parties.

Upon a careful review of the matters presented, we are of opinion that the decree of the circuit court correctly determines the interests of the parties, and the same will, therefore, be affirmed.

*Affirmed.*