119 So.2d 210

**Bill GILBREATH, Adm'r,**

v.

**W. J. LEVI.**

**8 Div. 977.**

Supreme Court of Alabama.

Dec. 17, 1959.

Rehearing Denied March 24, 1960.

H. G. Bailey, Boaz, for appellant.

Roberts & Orme, Gadsden, and T. J. Carnes, Albertville, for appellee.

STAKELY, Justice.

Under Sections 382, 383 and 384, Title 61, Code of 1940, the appellant, Bill Gilbreath, as Administrator of the Estate of Eschol J. Gilbreath, deceased, filed in the Probate Court of Marshall County, Alabama, his sworn report to the effect that to the best of his knowledge and belief the property of the deceased is insufficient to pay the just debts of the estate of the deceased and that the estate is insolvent. The Probate Judge set a day for the hearing of the report and gave due notice thereof as required by law. This report was contested by a claimant against the estate of the deceased, namely, W. J. Levi (appellee), who held a claim against the estate which had been reduced to judgment after the death of the decedent. A guardian ad litem was appointed by the court to represent and protect the interests of the minor children of the decedent. The guardian accepted the appointment and filed a denial of the averments of the report.

A hearing on the report was had ore tenus before the probate judge, who rendered a decree denying the report of insolvency and holding that the property of the estate, if sold, would be sufficient to pay the just debts of the estate. It is from that decree that the appellant has taken this appeal.

At the hearing of the report of insolvency the administrator, Bill Gilbreath, testified in substance as follows: At the time of the death of the intestate on January 24, 1955, there was on deposit in the bank to his credit the sum of $2,388.44. The decedent had on hand at that time cash and checks amounting to $1,610.90. At the time of his death the decedent was engaged in operating a used car lot in Gadsden, Alabama, and he had fifty-one cars on this lot when he died.

Under an order of the court he sold these fifty-one cars and received the sum of $15,-000 therefor. All of these cars were subject to the lien of a "floor plan" to the Atlas Finance Company of Gadsden, Alabama,

and that he used this $15,000 to make payment to the Atlas Finance Company on the indebtedness due the Atlas Finance Company under the lien of the aforesaid "floor plan." He used other funds of the estate in paying off the balance of this lien. This claim amounted to $18,780, for which sum the Atlas Finance Company filed a claim against the estate. He used the $2,388.44 in money in the bank to pay off the balance due the Atlas Finance Company and for checks outstanding at the time of intestate's death which the intestate had given before his death for the purchase of cars delivered to him before his death and which went under the lien of the floor plan. These cars were among the fifty-one cars which were on the lot at the time of the death of the intestate. There were cars going in and off this floor plan. The exact amount owed on the floor plan at the time of the intestate's death was $15,000. He paid from the administrator's account an outstanding check to Atlas Finance Company in the sum of $3,180 and that this was for the floor plan. There were at this time other outstanding checks given by the deceased before his death for the purchase of cars which were delivered to the deceased and went upon the car lot prior to his death as follows: F. G. Lowery, $1,675, Hoyt Plunkett, $1,500 and Attalla Motor Company $800. These checks were returned on account of the maker's death and they were paid by the administrator out of the funds of the estate supplemented by funds furnished by the widow of the deceased. Photostatic copies were introduced in evidence which represent a running account of funds paid into and out of the estate.

The running account includes insurance money of the widow of the decedent of which the administrator and the widow have kept a record.

Appellee in this cause filed a suit against the estate of the decedent wherein a judgment was obtained against the administrator in the sum of $2,160 with costs. See Gilbreath v. Levi, 268 Ala. 148, 105 So.2d 96.

With the exception of the real estate hereafter referred to, there were no assets of this estate other than the fifty-one automobiles, $2,384.44 in cash in the bank and checks amounting to $1,610.90, some notes and accounts which the administrator regarded as worthless with the exception of $600 received by him on one of the notes. All the money that he received from the estate as administrator went to pay the amount due on the floor plan for the fifty-one cars and other cars that went into the floor plan which were represented by outstanding checks as hereinabove set forth.

As administrator he paid some probate court costs in the matter of the court order proceedings in selling the cars and an attorney's fee in the aforesaid court proceedings. He did not have enough money on hand to pay all of this and he had to supplement with his private funds. He further testified that the widow of the deceased paid the funeral expenses of the deceased amounting to $1,000 from her private funds and the widow has also paid from her private funds (insurance funds) the amount due on a mortgage upon the homestead of realty owed by the deceased in the amount of $5,369.96 and that the widow and minors' exemptions in the personal property of the estate, towit the sum of $1,000 has not been paid.

All of the real estate owned by the deceased at the time of his death was his home dwelling situated upon twelve acres of land upon which there was a mortgage with balance due of $5,369.96, which the widow has paid, as aforesaid. The decedent (administrator's brother) paid about $900 for the land and $1,500 for the home, the original home he lived in on this land until he built another home thereon. He built on this land in the 1930's. The home is a three bedroom brick house. The administrator has lived in Boaz (the site of the real estate) all of his life. He is familiar with property values in the area and at the time of his brother's death this real estate, with the improvements, was

reasonably worth $12,000 or $1,000 per acre.

The witness further testified that the homestead has not been set aside to the widow and the minor children and that there were no insurance policies held by the deceased payable to the estate.

Mrs. W. J. Levi (wife of the claimant, W. J. Levi, who procured the aforesaid judgment), testified as follows. She was familiar with the twelve acres of land and the house thereon which Mr. Gilbreath owned at the time of his death. She is generally familiar with the value of property and that she would think that the house and land would be worth $15,-000 at the time of his death.

On cross examination this witness testified that she lived in Gadsden and had never lived in Boaz. She had never owned any property in or around Boaz. Her value was placed on present day values and that she has owned and sold property in Gadsden.

The administrator further testified that the total amount of money received by him from the estate was $19,599.34, that this includes the $15,000 derived from the sale of the cars, $2,388.44 in the bank, $1,610.90 in checks and cash and $600 on a note.

As against this were the claims of W. J. Levi for $3,500, reduced by judgment to $2,160.20, plus costs, and the claim of the Atlas Finance Company for $18,780, which claims were filed against the estate. The foregoing was all of the testimony heard at the hearing.

The estate of a decedent is to be declared insolvent "when the real and personal property is insufficient for the payment of the debts." § 382, Title 61, Code of 1940; Banks v. Speers, 97 Ala. 560, 11 So. 841, 842.

Conceding that the real estate of the decedent is worth the highest amount shown by the testimony, towit, the sum of $15,000, the estate according to the administrator breaks down as follows:

"Assets

| | |
|---|---|
| Real Estate | $15,000.00 |
| Received from sale of cars | 15,000.00 |
| Cash in bank | 2,388.44 |
| Checks and cash | 1,610.90 |
| Received on Griffin note | 600.00 |
| Total | $34,599.34 |

Claims against and liabilities of the estate:

| | |
|---|---|
| Atlas Finance Co. | 18,780.00 |
| W. J. Levi, appellee, | 2,160.20 and costs |
| Reimbursement to widow for funeral and burial expenses | 1,000.00 |
| Exemptions of personal property to widow and minor children to be paid from personal property of estate | 1,000.00 |
| Reimbursement to widow of amount she paid on mortgage on real estate | 5,369.99 |
| Homestead exemption to widow and minor children or either | 6,000.00 |
| F. L. Lowery claim | 1,675.00 |
| Hoyt Plumkett claim | 1,500.00 |
| Attalla Motor Company claim | 800.00 |
| Total claims and liabilities | $38,285.19" |

Section 383, Title 61, Code of 1940, provides that in making his report the administrator shall file with his report, among other things, the following: "A full statement of the claims against the estate which have come to his knowledge, the character and amount of each claim * * *."

The testimony is without conflict except as to the value of the real estate. The testimony of the administrator shows that this value at the time of the death of the intestate was $12,000 and there is other testimony that the real estate was at that time worth $15,000. So it seems to us that we can get to the heart of this case by determining whether the lower court was in error in holding that the equity of the decedent in the real estate, if sold, would be sufficient to pay all debts and claims against the estate.

There are only two claims filed against the estate, one by the Atlas Finance Company in the amount of $18,780 and the other by the appellee, W. J. Levi, in the amount of $2,160 plus costs. The claims of F. C. Lowery, Hoyt Plunkett and Attalla Motor Company were claims evidenced by outstanding checks which the decedent had given for the purchase price of cars before his death but delivered after his death. These cars were among the fifty-one cars sold because of the lien of the so called "floor plan."

■■ This brings us to a consideration of the status of the real estate. It appears to be the position of the appellee that since no steps have been taken by the widow and the minor children to have the real estate appraised, ascertained and determined to be exempt from administration when the decree of solvency was rendered, the said real estate is to be considered as a part of the assets of the estate of the decedent. This is not correct. The Alabama statutes do not contemplate that the claim for a homestead by the widow and minor children must be filed as a claim against the estate. "To be *a claim*

*against the estate,* there must be the relation of debtor and creditor; and we are not aware of any conceivable case in which the claims of heirs and legatees *to* the estate, or parts of it, can be called claims *against* the estate." Harrison's Adm'r v. Harrison's Distributees, 39 Ala. 489, 496.

■ The real estate owned by the decedent which was twelve acres in area, was all the real estate owned by the decedent at the time of his death and at the time of his death he resided thereon. Under both the Alabama Constitution of 1901, § 206, and under the Alabama statutes, the real estate of the decedent was of a homestead character to the extent of $6,000. §§ 661, 663, Title 7, 1955 Cumulative Pocket Part, Code of 1940. The claim of a homestead exemption may be asserted before a sale of the property. Kennedy v. First Nat. Bank of Tuscaloosa, 107 Ala. 170, 18 So. 396, 36 L.R.A. 308; Coleman v. Birmingham Fertilizer Co., 208 Ala. 160, 93 So. 904; B. F. Goodrich Silvertown Stores v. Brown, 253 Ala. 576, 46 So.2d 204. The real estate has not been sold. There is no decree ordering the sale thereof.

■ Under § 665, Title 7, Code of 1940, $1,000 is to be allowed the widow and minor children as their exemption to be paid from the personal property of the estate. These are prior claims against the estate regardless of debts.

■ Further we note that the widow out of her own funds has paid the balance due on the mortgage in the amount of $5,369.99. She has no rights as a general creditor of the estate because she has not presented her claim as required by § 211, Title 61, Code of 1940, but she has the right to enforce against the real estate her purely equitable right arising out of her payment of the mortgage indebtedness for the protection of her interest in the real estate. Des Portes v. Hall, 238 Ala. 641, 192 So. 899; Hughes v. Howell, 152

Ala. 295, 44 So. 410; Charmley v. Charmley, 125 Wis. 297, 103 N.W. 1106, 110 Am. St.Rep. 827; Foster v. Foster, 219 Ala. 70, 121 So. 80; 50 Am.Jur. 742–743. See Esslinger v. Spragins, 236 Ala. 508, 183 So. 401. The enforcement of this equitable right required no presentation of her claim. Hood v. Hammond, 128 Ala. 569, 30 So. 540.

 Furthermore the widow is entitled to be reimbursed for the funeral and burial expenses which she paid. This is a preferred claim and does not require presentation. Canada v. Canada, 243 Ala. 109, 8 So.2d 846.

 We think that the statement of the assets and liabilities of the estate as made by the administrator which is set forth above is correct.

In addition to the above list of liabilities, the estate will be liable for administration expenses, taxes and perhaps attorney's fees in the course of its administration.

 The estate is insolvent. We therefore do not agree with the finding of the trial court that there will be sufficient funds on hand to pay all debts or claims against the estate and that the estate is solvent.

We are remanding the cause to the lower court for such further proceedings as may be appropriate when an estate is insolvent. See § 389 et seq., Title 61, Code of 1940.

We have concluded that the decree of the lower court should be reversed, a decree here rendered holding the estate insolvent and the cause remanded.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

On Rehearing

STAKELY, Justice.

On application for rehearing it is insisted that so far no homestead claim has been asserted and further there has been no proof that the widow has a claim against the estate by subrogation growing out of the payment by her of the mortgage on the real estate and furthermore that even if such claim by way of subrogation was made, the Probate Court being a court of limited jurisdiction, cannot establish such claim.

In the original opinion we remanded the case to the lower court for such further proceedings as may be appropriate when an estate is insolvent. We, of course, do not know at this time what steps may be taken by the widow or in behalf of the minor children to claim a homestead and we do not know what the widow may assert for her claim by way of subrogation growing out of her payment of the mortgage on the real estate of the decedent in order to protect the homestead rights of herself and the minor children.

 If the jurisdiction of the Probate Court is so limited that a claim by way of subrogation cannot be determined therein, the estate can be transferred to the Circuit Court of Marshall County, in Equity, which undoubtedly will have jurisdiction to entertain such a claim by way of subrogation. This can be done by virtue of § 139, Title 13, Code of 1940.

 Furthermore we noted in our original opinion that § 383, Title 61, Code of 1940, provides that in making this report, "the administrator shall file with his report a full statement of the claims against the estate which have come to his knowledge, the character and amount of each claim * * *." The claims referred to by the administrator accordingly are not necessarily claims which should be presented under § 214, Title 61, Code of 1940.

**420**

As we pointed out in the original opinion, the claim of the widow growing out of her payment of the balance due on the mortgage requires no presentation. It seems to us, however, that the widow should now proceed to establish her claim by way of subrogation as well as her claim for reimbursement for funeral expenses. Steps should also now be taken by her or in behalf of the minor children to assert and to establish their rights, if any, to the homestead exemption or to any exemption they may have in the personalty of the estate. If such proceedings are not instituted within a reasonable time to be fixed by the lower court after this extended opinion is there received, such claim or claims should not be considered in settling the estate.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.