WRIGHT, Presiding Judge.
Steve Lamar died intestate in 1969. At his death, he owned a parcel of real estate that was encumbered by a mortgage to Baldwin County Bank. His wife, Cornelia, and several brothers and sisters survived him. There were no children born to Steve and Cornelia during their marriage, and both of Steve’s parents were deceased at the time of his death.
In 1981, the Housing Authority of the City of Bay Minette, seeking to acquire land upon which to build a housing project, began condemnation proceedings against six parcels of land, one of which was the parcel that Steve Lamar owned at the time of his death. By then, Cornelia had also passed away. In July 1982, a condemnation judgment awarding compensation in the amount of $5,000 was entered against the property. The award was in favor of “Ruben Lamar, Laura Lamar Williams, Annie B. Lamar (one brother and two of the sisters of Steve Lamar) and all of the heirs or devisees of Steve Lamar, deceased, who are unknown and Baldwin County Bank.”
In December, 1982, Eva Lamar George filed a claim for the award in the Probate Court of Baldwin County. She claimed that she was the child of Steve Lamar, and as such, was his sole surviving heir and thereby entitled to the entire condemnation award.
*1244 In January 1983, Joe Davis Lamar (the son of John Lamar, another of Steve Lamar’s brothers) filed a denial of claim against Eva Lamar George. The substance of Joe Lamar’s claim was that Eva Lamar George was not the legal heir of Steve Lamar. Joe Lamar also stated that at the time of Steve Lamar’s death, there was a balance due on the mortgage on Steve Lamar’s property of $735; that he had paid that amount to the Baldwin County Bank. Joe Lamar requested that the court determine the lawful heirs of Steve Lamar and that he be reimbursed for the money paid to satisfy the mortgage.
In March 1983, Ruben Lamar and Laura Lamar Williams filed a response to Eva Lamar George’s claim, also alleging that she was not a legal heir and therefore was not entitled to any part of the condemnation award.
The case was transferred to Baldwin County Circuit Court because of the adverse claims and the apparent need for determination of title to the land. A hearing on the matter was held. The facts show that Eva Lamar George was born in 1940 and that Steve Lamar was her father. Her mother, however, was not Cornelia Lamar, but was Cassie Crook Lamar (also known as Cassie Gable). There was no proof of a common-law marriage between Steve Lamar and Cassie. The parties also have stipulated on appeal that Eva Lamar George had not been legitimated by any method provided for by Alabama law.
The circuit court entered a final decree in June 1984 which concluded that Eva Lamar George was not entitled to inherit from her father, Steve Lamar. The court ruled that the Alabama statutes denying the right of succession to property of the father by an illegitimate child were constitutional. The court made no provision for a reimbursement award to Joe Lamar for his payment to satisfy the outstanding mortgage, and then divided the condemnation award as follows:
a. Ruben Lamar ⅝
b. Laura Lamar Williams Va
c. Heirs of Annie B. McWhorter Vs
d. Heirs of Henry Lamar Ve
e. Heirs of John Lamar Vs
f. Heirs of Mark Lamar ¾⅝
Joe Lamar received a V42 share as one of the seven children of John Lamar. Prom that final judgment, this appeal is taken.
Joe Lamar contends that the trial court erred in not granting his request for reimbursement. Eva Lamar George, in a cross-appeal, contends that Alabama’s statutory scheme of inheritance denies the equal protection of the laws guaranteed by U.S. Const. amend. XIV, § 1 and Ala. Const. art. I, § 1, by discriminating against her on the basis of illegitimacy.
When Steve Lamar died intestate in 1969, the order of distribution to heirs of an intestate was controlled by Title 16, § 1, Code of Alabama 1940 (Recomp.1958). Under that section, if there were no children of the intestate or descendants of children, and no father or mother of the intestate surviving, the real estate owned by the intestate passed to the brothers and sisters of the intestate or their descendants in equal parts. Title 16, § 1(5), Code of Alabama 1940 (Recomp.1958). Although the intestate’s property passed subject to the widow’s dower interest (a life estate), Title 34, § 40, Code of Alabama 1940 (Recomp. 1958), the rights of the siblings and/or their children accrued at the death of Steve Lamar. Stallworth v. Hicks, 434 So.2d 229 (Ala.1983). Therefore, at the death of Steve Lamar, Joe Lamar, as a descendant of John Lamar, Steve’s brother, had a remainder interest in Steve Lamar’s estate. Because of this, Joe Lamar had a right to protect his interest by paying off the balance due under the mortgage and had an equitable right to reimbursement from the estate of the decedent. Gilbreath v. Levi, 270 Ala. 413, 119 So.2d 210 (1959); Foster v. Foster, 219 Ala. 70, 121 So. 80 (1929).
Eva Lamar George contends on appeal that at least one of several different statutes of limitation should operate to bar Joe Lamar’s claim. We hold that they do not. Section 6-2-41, Code of Alabama 1975 (two-year limitation) does not apply *1245 here because Joe Lamar is neither a mortgagee or a purchaser for value. Section 6-2-35, Code of Alabama 1975 (five-year limitation) is not applicable because the land was not sold under a judgment after Steve Lamar’s death. Even if the condemnation were to be considered a “sale,” Joe Lamar filed his claim within six months of the condemnation judgment. Section 6-2-34(5) (six years) is inapplicable here also, as there is no evidence that Joe Lamar ever considered his payment of the mortgage balance to be a loan to the estate.
In addition to the above statutory limitation periods, we must also consider the limitation imposed by § 43-2-350, Code 1975 (the “statute of non-claims”). Ordinarily, claims against an estate that are not presented within six months of the grant of letters testamentary or letters of administration “are forever barred.” § 43-2-350(b), Code of Alabama 1975. However, the statute of non-claims does not operate here to bar Joe Lamar’s claim because no administrator of the decedent’s estate was ever appointed. Central Acceptance Corporation v. Colonial Bank of Alabama, N.A., 439 So.2d 144 (Ala.1983); Trotter v. Brown, 232 Ala. 147, 167 So. 310 (1936); Merchant’s National Bank v. McGee, 108 Ala. 304, 19 So. 356 (1895). Additionally, the equitable right to reimbursement arising from payment of a mortgage debt by one who has an interest in an estate in order to protect his interest is not within the purview of the statute of non-claims. Myers v. Parker, 349 So.2d 1136 (Ala.1977). The enforcement of that equitable right required no presentation of his claim within the non-claims period. Gilbreath v. Levi, supra.
Finally, we do not find that his claim is barred by laches. See Caldwell v. Caldwell, 183 Ala. 590, 62 So. 951 (1913). (There a claim based on an analogous situation was held not barred by laches despite a fourteen-year wait.)
In response to the contentions of Ms. George, we first note that the standard of review applied to an equal protection challenge is whether the different treatment of the class of people in issue is substantially related to the purpose of that legislation. Jones v. Jones, 355 So.2d 354 (Ala.1978). The purpose of our inheritance statutes regarding illegitimates is to avoid the uncertainty and potential for fraud inherent in permitting people to claim paternity of an intestate after the purported father has died and, in many cases, decades after the alleged child’s birth. Everage v. Gibson, 372 So.2d 829 (Ala.1979).
Everage was the first case to hold that the Alabama statutory system regarding illegitimate children and intestacy is constitutional and does not violate the Equal Protection Clause of the United States and Alabama Constitutions. It was held that our statutory scheme was similar to the one upheld in Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), and that there are three ways to become legitimated: (1) marriage of the parents plus a clear and unambiguous recognition of the child by the father; (2) a witnessed and filed declaration of legitimation by the father; or (3) a judicial recognition of paternity made within two years of birth (now within five years of birth) and during the father’s lifetime. As counsel for Ms. George points out, Everage, although battle-scarred, still remains precedent.
In Handley, by and through Herron v. Schweiker, 697 F.2d 999 (11th Cir.1983), Alabama’s statutory system of inheritance as it relates to illegitimates was once again scrutinized. The United States Court of Appeals held the legislation was unconstitutional only as applied to the facts of that case.
“We hold that application of the requirement that paternity proceedings be maintained during the father’s lifetime is unconstitutional as applied to illegit-imates whose fathers have died within one year after their birth, and who would thereby effectively be barred from receiving child’s benefits under section 416(h)(2)(A) because of legal inability to prove paternity. Our holding is limited to the issue presented. We do not suggest that a similar decision would be *1246 required where a private estate settlement is in issue or where posthumous paternity proceedings were brought for the purpose of obtaining child support from the father’s estate.” (Emphasis added.)
The Alabama statutory scheme was held to pass the “substantial relationship” test otherwise.
Throughout the federal cases from Lalli, supra, a second test is used called the “insurmountable barrier” test. A statute cannot create an insurmountable barrier for illegitimates. Although such a barrier existed in Handley, Ms. George has not been confronted with a similar barrier. She was alive during twenty-nine years of her father’s life and apparently never took any legal steps toward legitimation until the time of this suit.
We reaffirm the holding in Everage v. Gibson, and find Alabama’s statutory system regarding illegitimate children and inheritance to be constitutional. Therefore, the final decree entered by the trial court is due to be affirmed insofar as it relates to Ms. George. We reverse the trial court on its refusal to award to Joe Lamar an award sufficient to reimburse him for the mortgage debt he paid, and remand with instructions that he be reimbursed from the bulk of the estate for the amount he paid to satisfy the mortgage. He and the other heirs may then inherit their respective shares from the remainder of the estate.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BRADLEY and HOLMES, JJ., concur.