DONALDSON, Judge.
Frederick Roosevelt Dunning, Jr., and Janice Dunning Sandifer (hereinafter referred to collectively as "the appellants") appeal from a judgment of the Marengo Circuit Court ("the trial court") determining that Lula Mayhew is the common-law spouse of Frederick Roosevelt Dunning, Sr., the deceased. We affirm the judgment.[1]
*617 Frederick Roosevelt Dunning, Sr. ("Roosevelt"), died intestate on March 8, 2015. On December 2, 2015, Richard Bates, the Sheriff of Marengo County, filed a petition for letters of administration in the Marengo County Probate Court ("the probate court") in which he asserted that Roosevelt's only heirs were Roosevelt's two adult children, Frederick Roosevelt Dunning, Jr. ("Frederick Jr."), and Janice Dunning Sandifer, and that they lived out of state and were not qualified to serve as administrators. See § 43-2-22(a), Ala. Code 1975. Both children filed a consent to the appointment of the sheriff as administrator and a waiver of further service in the probate court.
On January 21, 2016, Sheriff Bates filed a motion seeking assistance from the probate court in gaining access to Roosevelt's home in order to conduct an inventory of the estate. In that motion, Sheriff Bates asserted that Lula, the "alleged significant other" of Roosevelt, lived in the home and would not permit access to the home. It is not clear from the record whether any action was taken by the probate court on that motion; however, on January 22, 2016, the probate court entered an order granting limited letters of administration and appointing Sheriff Bates as the personal representative of Roosevelt's estate.
On May 19, 2016, Lula filed a claim against Roosevelt's estate in which she asserted that she was Roosevelt's surviving spouse and that she and Roosevelt had two children, Sheila Mayhew Ford and Galvin Mayhew. Frederick Jr. and Janice are children from Roosevelt's marriage to Alice, his former spouse.
On June 20, 2016, Lula filed in the trial court a petition to remove the administration of the estate from the probate court to the trial court pursuant to § 12-11-41, Ala. Code 1975, and the administration of the estate was removed to the trial court the same day.
On November 9, 2016, the trial court held a hearing on the pending issues. Lula testified that she met Roosevelt in 1969 in Chicago, Illinois, and that they began a romantic relationship at that time when Roosevelt was still married to Alice. Lula testified that she and Roosevelt had two children: Sheila Mayhew Ford, born in 1971, and Galvin Mayhew, born in 1976. Lula did not list a father on either child's birth certificate. In 1980, Roosevelt moved briefly to California for work, but he then returned to Chicago. In the early 1980s, Roosevelt moved to Alabama for a few years to care for his dying father, and then he returned to Chicago. Lula testified that Roosevelt divorced Alice in 1982 or 1983.
Lula testified that, in February 1990, Roosevelt and Lula moved to Alabama together, where they lived with Roosevelt's cousin until April 2014 when they moved into their mobile home. Lula testified that she and Roosevelt lived there together until his death. Lula testified that, at some point, she had briefly lived with her mother to care for her until her mother's death.
Lula testified that she and Roosevelt had shared a joint bank account since 1990 and that they both deposited money into the account to pay their household expenses. Lula testified that she began receiving Social Security disability benefits in 2000, that the checks were mailed to an Aliceville address where her mother lived until 2013, but that she deposited a portion *618 of each of those checks into her and Roosevelt's joint account each month.
Roosevelt was listed as "divorced" on his death certificate, and Lula testified that she provided the information for the death certificate to the coroner. The testimony regarding those circumstances was not clear. Lula testified that, after Roosevelt's death, she worked with Roosevelt's children, including Janice and Frederick Jr., to write Roosevelt's obituary, which listed Lula as Roosevelt's wife. Lula testified that she paid for Roosevelt's burial plot and other grave expenses.
Lois Young testified that Roosevelt was her brother, that she lived near Roosevelt and Lula when they moved to Alabama, and that she believed that Roosevelt and Lula were husband and wife. Young testified that she never heard Roosevelt specifically call Lula his wife.
Andy Etheridge testified that he sold various insurance policies to Roosevelt and Lula. Etheridge testified that Lula was the beneficiary of a life-insurance policy on Roosevelt and that Lula was listed as Roosevelt's common-law wife on the policy. Etheridge testified that, likewise, Roosevelt was listed as Lula's common-law husband and as beneficiary of Lula's life-insurance policy. Etheridge testified that both Roosevelt and Lula had identified the other as a common-law spouse when he sold the policies.
Sheriff Bates testified that he knew Roosevelt and Lula from the community and from their church and that he believed that they were married and had a child together. Sheriff Bates testified that it was not until after Roosevelt's death, when he was appointed as administrator, that he learned that Roosevelt and Lula had not been ceremoniously married.
Joseph Moore testified that he had known Roosevelt and Lula for a long time and that he called them "mama" and "daddy." Moore testified that Roosevelt referred to Lula as his wife on multiple occasions and that Roosevelt referred to Galvin as his son. Moore testified that he did not know that Roosevelt and Lula had not been ceremoniously married until after Roosevelt's death. Moore also testified that Roosevelt never talked about his children from his marriage to Alice-Frederick Jr. and Janice-and that Roosevelt had "cleaned the slate" when he moved to Alabama.
Galvin Mayhew testified that he is Roosevelt's and Lula's son. Galvin testified that Roosevelt had introduced Lula as his wife and Galvin as his son on occasions. Galvin also testified that Lula had received mail addressed to "Lula Dunning."
Janice Sandifer testified that she is Roosevelt's 57-year-old daughter. Janice remained in Chicago when Roosevelt moved to Alabama. Janice testified that Roosevelt had never referred to Lula as his wife, that Roosevelt told her that he did not want to marry Lula, and that Roosevelt had stated that he was not going to get married to appease members of their church that thought he and Lula should be married.
Janice testified that, on the day of the funeral she read the obituary that Lula had prepared and that the portion listing Lula as Roosevelt's wife was not true. Janice testified that she wrote another obituary and that she listed Roosevelt as being married to her mother, Alice, and listed Lula as an extended family member. Janice also testified that she suffers from short-term memory problems as a result of epilepsy.
Frederick Jr. testified that he is Roosevelt's son and that he lived with Roosevelt and Lula in the mid 1990s. Frederick Jr. testified that Roosevelt never referred to Lula as his wife and that *619 Roosevelt never discussed marriage. Frederick testified that his father intended to stay single and be a "playboy" and that he had had other girlfriends that Frederick Jr. had met. Frederick Jr. testified that, in 2014, he heard Lula tell Roosevelt that she did not understand why he would not marry her, but, Frederick Jr. stated, Roosevelt did not answer.
On December 5, 2016, the trial court entered the following order:
"This cause came to he heard by this Court on November 9, 2016, Present in Court were Petitioner, Lula Mayhew, and her attorney, Jamee I. York, as well Frederick Roosevelt Dunning, [Jr.,] Respondent, and [his] attorney Woodford W. Dinning, Jr. This Court took testimony, received evidence and heard argument from both counsel. After doing so, this Court hereby finds the following:
"The Petitioner, Lula Mayhew, presented evidence that clearly and convincing[ly] establishes [Lula] and Frederick Roosevelt Dunning, deceased, entered into a common law marriage.
"It is therefore ORDERED, ADJUDGED and DECREED that the petition of Lula Mayhew is hereby granted, and Lula Mayhew is recognized as the surviving common law spouse of Frederick Roosevelt Dunning, deceased."
On January 17, 2017, the appellants timely filed a notice of appeal to this court.[2] We transferred the appeal to the supreme court based on our lack of subject-matter jurisdiction. See § 12-22-22, Ala. Code 1975 (providing that the supreme court has jurisdiction over appeals from the circuit court in probate matters). The supreme court deflected the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The appellants challenge the trial court's judgment finding that Lula is the common-law spouse of Roosevelt.[3]
"In Lofton v. Estate of Weaver, 611 So.2d 335 (Ala. 1992), our supreme court set forth the standard of review appropriate to this case:
" ' "Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof." Baker v. Townsend, 484 So.2d 1097, 1098 (Ala. Civ. App. 1986), citing Walton v. Walton, 409 So.2d 858 (Ala. Civ. App. 1982). A trial judge's findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala. 1989). The trial court's judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it "will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment." Adams v. Boan, 559 So.2d 1084, 1086 (Ala. 1990) (citation omitted).'
*620 " 611 So.2d at 336. 'Clear and convincing evidence' is defined as
" '[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.'
"§ 6-11-20(b)(4), Ala. Code 1975. Discussing the elements of a common-law marriage, this court has written:
" 'In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer], 689 So.2d [194,] 195 [ (Ala. Civ. App. 1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala. Civ. App. 1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala. 1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala. Civ. App. 1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).'
" Gray v. Bush, 835 So.2d 192, 194 (Ala. Civ. App. 2001)."
Cochran v. Chapman, 81 So.3d 344, 345-46 (Ala. Civ. App. 2011).
The appellants assert that Lula did not introduce evidence related to Roosevelt's and Lula's capacity to enter into a marriage. Capacity was not at issue, however, and the appellants did not raise any argument related to capacity at the trial. "[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [its] review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992).
The appellants further argue that clear and convincing evidence does not support a determination that Roosevelt and Lula had the " 'present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships' " or that there existed any " 'public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.' " Stringer v. Stringer, 689 So.2d 194, 195 (Ala. Civ. App. 1997) (quoting Boswell v. Boswell, 497 So.2d 479, 480 (Ala. 1986) ).
Lula testified that she and Roosevelt were common-law married when they moved to Alabama in 1990 and began living together. Lula testified that she and Roosevelt lived together, considered themselves married, held themselves out to the public as husband and wife, and shared a bank account and household expenses.
Galvin, Sheriff Bates, Young, and Moore all testified that they believed that Roosevelt and Lula were married. Moore and Galvin testified that they had heard Roosevelt introduce Lula as his wife. Etheridge, the insurance salesman, testified that both Lula and Roosevelt identified the other as a common-law spouse when obtaining insurance policies.
Janice and Frederick Jr., Roosevelt's children from his marriage to his former spouse, were the only witnesses that testified that Roosevelt and Lula were not *621 common-law married, that Roosevelt had never held Lula out as his wife, and that the community knew that they were not married.
The trial judge was tasked with making credibility determinations and resolving conflicting evidence. Reid v. Flournoy, 600 So.2d 1024, 1026 (Ala. Civ. App. 1992) (the trial court is "the sole judge of the credibility of a witness"). "When the evidence is conflicting, [this] court presumes that the finding supporting the [trial] court's judgment is correct." R.T.B. v. Calhoun Cty. Dep't of Human Res., 19 So.3d 198, 205 (Ala. Civ. App. 2009) (citing Ex Parte P.G.B., 600 So.2d 259, 261 (Ala. 1992) ).
Based on the evidence in the record and the presumptions afforded to the trial court's judgment, we conclude that the trial court could have been clearly convinced that Lula was Roosevelt's common-law spouse. Accordingly, the judgment is affirmed.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

The common-law marriage at issue in this case was entered into before January 1, 2017, the effective date of § 30-1-20, Ala. Code 1975, which provides that "[n]o common-law marriage may be entered into in this state on or after January 1, 2017," but that "[a]n otherwise valid common-law marriage entered into before January 1, 2017, shall continue to be valid in this state."

Although 42 days from December 5, 2016, the date the judgment was entered, was January 16, 2017, that day fell on the birthday of Martin Luther King, Jr., which is recognized as a state holiday; Therefore, the appellants' notice of appeal was timely filed on January 17, 2017. See Rule 4(a)(1), Ala. R. App. P.

We note that our appellate courts have treated a judgment in a probate proceeding determining that a common-law marriage existed as final for purposes of appeal. See, e.g., Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala. 1992) ; Aaberg v. Aaberg, 512 So.2d 1375, 1376 (Ala. 1987) ; Butler v. Coonrod, 671 So.2d 750, 751 (Ala. Civ. App. 1995) ; and Watkins v. Watkins, 190 So.3d 925, 933 (Ala. Civ. App. 2015).