WISE, Justice.
The plaintiff below, Charlotte Harbin, appeals from the Colbert Circuit Court's judgment in favor of the defendants below, Glenn E. Estess, Jr., as personal representative of the estate of Lecil V. Thomas; Richard Thomas; and Roger Thomas (hereinafter collectively referred to as "the appellees").[1]
Facts and Procedural History
Lecil and Tommie Thomas were married and had three children, one of whom predeceased them. They had two surviving sons -- Richard Thomas and Roger Thomas (hereinafter collectively referred to as "Lecil's sons"). Lecil executed a will on November 30, 1995, and executed a codicil to that will on December 3, 2003. Tommie died on February 10, 2005. Lecil executed a second codicil to his will on February 13, 2008.
According to Harbin, she and Lecil started dating after Tommie's death. She also asserted that they lived together off and on until September 2009, when, she says, they started living together as husband and wife.
Lecil died on April 28, 2013. On May 30, 2013, Estess filed a petition for probate of Lecil's will in the Colbert County Probate Court. The petition listed Harbin as Lecil's "putative common-law wife." On May 30, 2013, the probate court admitted the will to probate and granted Estess letters testamentary.
On May 14, 2014, Harbin filed a petition in the probate court seeking an omitted spouse's share of Lecil's estate pursuant to *302 § 43-8-90, Ala. Code 1975. In her petition, Harbin asserted that she was Lecil's common-law wife at the time of his death and that she had become Lecil's common-law wife after he had executed the will that had been admitted to probate.[2] On July 3, 2014, Estess filed an objection to Harbin's petition. Harbin filed her response to that objection on July 7, 2014. Estess filed a petition for removal, and the administration of the estate was removed to the Colbert Circuit Court on October 7, 2014.
On April 30, 2015, Estess filed a renewed objection to Harbin's petition seeking a share as an omitted spouse, arguing that the circuit court did not have jurisdiction to consider her petition. Specifically, Estess asserted that, pursuant to § 43-2-350, Ala. Code 1975, Harbin was required to file her petition within six months after letters testamentary were granted; that Harbin did not file her petition within that six-month period; and that her petition thus was barred. Estess also asserted that Harbin could not establish that she was Lecil's common-law wife.
On May 5, 2015, Harbin filed a response. She asserted that, because § 43-8-90 does not include a time-bar, the circuit court had jurisdiction over her petition. She also asserted that "43-2-350(b), Ala. Code 1975, reaffirms [Harbin's] position by stating, 'The provisions of this subsection do not apply to heirs or devisees claiming as heirs or devisees.' " Harbin further asserted that she submitted clear and convincing evidence that would support a finding that a common-law marriage existed between her and Lecil.
On May 15, 2015, Estess filed a motion to dismiss or, in the alternative, for a summary judgment. Estess attached to the motion his affidavit and various supporting documents. On June 15, 2015, Harbin filed her response to Estess's motion. Harbin attached to her response her affidavit and several supporting documents.
On November 1, 2015, Lecil's sons filed a motion to intervene as defendants. They also filed a proposed answer and a proposed counterclaim seeking a judgment declaring that Harbin was not Lecil's common-law wife at the time of his death on April 28, 2013; that Harbin thus was not an omitted spouse; and that Harbin was not entitled to a share of Lecil's estate. On April 4, 2016, the circuit court granted the motion to intervene and deemed the answer and counterclaim as filed as of that date. Harbin subsequently filed an answer to Lecil's sons' counterclaim.
On October 25, 2017, apparently following a hearing,[3] the circuit court entered the following order:
"Lecil V. Thomas ('Mr. Thomas') died on April 28, 2013. On May 30, 2013, the Probate Court admitted Mr. Thomas's Last Will and Testament to probate and granted Letters Testamentary to Glenn E. Estess, Jr. ('Mr. Estess'). Ms. Harbin is a beneficiary of Mr. Thomas's estate.
"As a beneficiary, Ms. Harbin was entitled to, and received notice of, the will's admission to Probate Court. Additionally, notice to 'all persons having *303 claims against [Mr. Thomas's estate]' was published in the Colbert County Reporter Standard and Times informing potential claimants that they were required to file itemized and verified statements of claims in the office of the Judge of Probate by November 30, 2013 'or said claim will be barred and payment prohibited.' It is undisputed that Ms. Harbin communicated with Mr. Estess before the will was admitted to probate regarding a potential claim she had against Mr. Thomas's Estate. Ms. Harbin suggested 'if the estate [honored a $1,000[,000].00[4] check written during Mr. Thomas's lifetime], I will make no further claim against it.' It is also undisputed that Mr. Estess told Ms. Harbin that he could not honor the check. The matter was never discussed again, and Ms. Harbin did not file a claim by November 30, 2013.
"Over a year after Mr. Thomas's death, and almost six months after the claim period closed, Ms. Harbin filed a petition in the Probate Court's administration of Mr. Thomas's estate. The petition asks the Probate Court to declare that Ms. Harbin was the common-law spouse of Mr. Thomas, was omitted from Mr. Thomas's will, and as 'an omitted spouse of the decedent ... [is] therefore entitled to her intestate share.' Mr. Estess moved to dismiss Ms. Harbin's petition arguing that the Court lacked jurisdiction to hear Ms. Harbin's petition because it was filed more than six months after the will was admitted to probate. Ms. Harbin objected, alleging that her petition is the claim of an heir and therefore is not barred by § 43-2-350.
"Ms. Harbin filed her petition in the Probate Court as part of the probate administration of the Estate of Lecil V. Thomas. Regardless of how it is titled, Ms. Harbin's 'Petition' is legal assertion that she is Mr. Thomas's common-law spouse and her petition asks the Court to recognize her as such. The effect of such a recognition would necessarily impact the speedy, safe, and settlement [sic] of Mr. Thomas's estate, which is the very purpose of § 43-2-350. Motley v. Battle, 368 So.2d 20 (Ala. 1979). There is only one way to invoke the Court's jurisdiction to make such a declaration within the confines of an estate administration, and that is under § 43-2-350. And, until it is determined that Ms. Harbin is a common-law spouse, she is not an heir excepted from the requirements of § 43-2-350.
"Having read all of the submissions and heard oral arguments on the motion to dismiss, the Court finds:
"(1) That Ms. Harbin's petition constitutes a claim against the Estate of Lecil V. Thomas;
"(2) That the claim was filed after November 30, 2013; and
"(3) Is therefore barred by § 43-2-350."
This appeal followed.
Standard of Review
Because the circuit court indicated that it considered matters outside the pleadings, Estess's motion to dismiss was more properly treated as a motion for a summary judgment. See Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784 (Ala. 2007).
"In Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003), this Court stated:
" 'Summary judgment is appropriate only when "there is no genuine *304 issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). "[W]here the evidence is in conflict, the issue must [be tried to the fact-finder]." Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47 (Ala. 1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra. '
"( [E]mphasis added.)"
Blackmon v. Brazil, 895 So.2d 900, 904 (Ala. 2004).
Discussion
Harbin argues that the circuit court erroneously found that her claim was barred by § 43-2-350, Ala. Code 1975, a nonclaim statute, which provides:
"(a) All claims against the estate of a decedent, held by the personal representative of the decedent or by an assignee or transferee of the personal representative, or in which the personal representative has an interest, whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed thirty days after notice within which to present the claim, by filing the claims, or statement thereof, verified by affidavit, in the office of the judge of probate, in all respects as provided by section 43-2-352. All claims not so presented and filed are forever barred, and the payment or allowance thereof is prohibited. But this subsection shall not apply to claims of personal representatives to compensation for their services as such, nor to sums properly disbursed by them in the course of administration.
"(b) All claims against the estate of a decedent, other than the claims referred to in subsection (a) of this section, whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 must be allowed 30 days after notice within which to present the claim, and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited. Presentation must be made by filing a verified claim or verified statement thereof in the office of the judge of probate of the county in which the letters are granted. Claims which have not been filed and which are liens against the property of the decedent may be paid by the personal representative to protect the assets of the estate. The provisions of this subsection do not apply to heirs or devisees claiming as heirs or devisees."
(Emphasis added.) Section 43-8-1(13), Ala. Code 1975, defines "heirs" as "[t]hose persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." (Emphasis added.) Section 43-8-90, Ala. Code 1975, the omitted-spouse statute, applies when "a testator fails to provide by will for his surviving spouse who married the testator after the execution of the *305 will." (Emphasis added.) Thus, it is clear that § 43-2-350(b) does not apply to a claim for an omitted spouse's share pursuant to § 43-8-90, Ala. Code 1975.
It is undisputed that Harbin did not file her petition for an omitted spouse's share within six months after the grant of the letters testamentary. However, Harbin's claim is for an omitted spouse's share, which does not constitute a claim against the estate.
The appellees assert:
"Even if the petition for the omitted spouse share could be considered a 'claim against the estate by an heir,' a petition to declare someone a common-law spouse is not. Thus, it is not excepted from the scope of non-claim statute and must be filed within the six-month claim period, a practice common for those like Ms. Harbin seeking recognition of a common-law marriage for the purpose of establishing heirship."
(Appellees' brief at p. 17.) The appellees do not cite any authority to support their proposition that, when a person claims an omitted spouse's share as a common-law spouse, the threshold determination of whether a common-law marriage existed is separate and distinct from the claim for an omitted spouse's share. Also, they do not cite any authority that supports their assertion that a threshold determination regarding the existence of a common-law marriage is a claim against the estate, pursuant to § 43-2-350, Ala. Code 1975, subject to the time limits in the statute.[5]
However, even if a threshold determination of whether a common-law marriage exists is a separate matter from Harbin's petition claiming an omitted spouse's share, such a determination does not constitute a claim against the estate pursuant to § 43-2-350. The original nonclaim statute in Alabama was enacted in 1815 and has existed in various forms since that time. See Jones v. Drewry, 72 Ala. 311 (1882). This Court has explained that the purpose of the nonclaim statute is to
"facilitate a safe and speedy settlement of estates, by furnishing the personal representative the means of determining its financial status within [the designated time] after his appointment."
McDowell v. Brantley, 80 Ala. 173, 177 (1885). As this Court noted in Fretwell v. McLemore, 52 Ala. 124, 142 (1875), the authority interpreting nonclaim statutes rests on the principle "that every claim or demand which can be made the foundation of suit against the personal representatives, and the recovery of which will diminish the assets in his hands, subject to administration for the benefit of creditors, of heirs or legatees, falls within the operation of statutes prescribing a bar to suits against him." This Court went on to explain:
"The claim of 'heirs or legatees claiming as such,' excepted from the operation of the statute of non-claim, is not a claim against, but a claim to the estate. It is a claim to that portion of the estate to which, if the person through whom they claim died intestate, they are entitled by virtue of the statutes of descents and distributions, or if he died testate, to which they succeed under his last will. If the administrator or executor dies, having *306 specific property in his hands unadministered or unconverted, then as to such property the claim to it, whether preferred by heirs or legatees, or a succeeding representative, is not within the statute of non-claim. It is a claim of title, which, like all other claims of title, is not a claim chargeable on the assets in the hands of the personal representative for administration. Locke v. Palmer, 26 Ala. 312 [ (1855) ] ; Johnson v. Ames, 11 Pick. 173[, 28 Mass. 173] [ (Mass. 1831) ]."
Fretwell, 52 Ala. at 146 (emphasis added.)
"A claim, in the sense here used, is almost the synonym of moneyed demand; for it is required to be presented, only when money is claimed to be due. It has no reference to property alleged to be withheld. It must be payable in money, although it is not necessary it should be due and payable presently."
McDowell, 80 Ala. at 177.
In Gilbreath v. Levi, 270 Ala. 413, 119 So.2d 210 (1959), this Court addressed whether a widow and minor children's claim for a homestead exemption was a claim against the estate that had to be presented within the time limitations set forth in Title 61, § 211, Ala. Code 1940, the precursor to § 43-2-350. In addressing that issue, this Court stated:
"Alabama statutes do not contemplate that the claim for a homestead by the widow and minor children must be filed as a claim against the estate. 'To be a claim against the estate, there must be the relation of debtor and creditor; and we are not aware of any conceivable case in which the claims of heirs and legatees to the estate, or parts of it, can be called claims against the estate.' Harrison's Adm'r v. Harrison's Distributees, 39 Ala. 489, 496 [ (1864) ]."
Gilbreath, 270 Ala. at 418, 119 So.2d at 215 (some emphasis added).
In her petition seeking an omitted spouse's share of Lecil's estate, Harbin asserts that she is Lecil's common-law surviving spouse and that, therefore, she has an interest in a portion of Lecil's estate. Such a claim is a claim of title for purposes of the nonclaim statute and, therefore, not a claim against the estate. Cf. Fretwell, supra. A determination of whether Harbin was Lecil's common-law wife does not involve a relationship of debtor and creditor between Harbin and the estate. Cf. Gilbreath, supra. Also, a determination of whether a common-law marriage existed does not diminish the assets of the estate and does not affect the financial status of the estate. Cf. Fretwell, supra ; McDowell, supra. Finally, a request for a determination that Harbin is Lecil's common-law spouse, standing on its own, does not involve a claim for money. Cf. McDowell, supra. Thus, the appellees' argument in this regard is without merit.
In its order entering the judgment on Harbin's petition, the circuit court stated that Harbin's petition sought recognition that she was Lecil's common-law spouse. It reasoned that recognizing Harbin as Lecil's common-law wife "would necessarily impact the speedy, safe, and settlement [sic] of Mr. Thomas's estate." However, a spouse's claim for a homestead exemption would also affect the settlement of the estate, but this Court has held that such a claim does not constitute a claim against the estate that must be presented within the time limitations set forth in § 43-2-350. See Gilbreath, supra.
For the above-stated reasons, we hold that Harbin's petition seeking an omitted spouse's share of Lecil's estate was not a claim against the estate that had to be presented within the time set forth in § 43-2-350(b), Ala. Code 1975. Accordingly, the circuit court erred in denying Harbin's petition on that ground.
*307 The appellees assert that, even if Harbin's petition was not barred by § 43-2-350, the circuit court could have properly entered a summary judgment because, they assert, Harbin "failed to support her claim of common-law marriage with substantial evidence that clearly and convincingly demonstrated that such a marriage occurred." (Appellees' brief at p. 22.) It is true that this Court
" ' " 'will affirm the judgment appealed from if supported on any valid legal ground.' " Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988) (citation omitted).' "
Blackmon, 895 So.2d at 905 (Ala. 2004) (quoting Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 51 (Ala. 2003) ) (emphasis added; emphasis omitted).
"The Alabama Supreme Court stated in Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala. 1992) :
" ' "Courts of this state closely scrutinize claims of common-law marriage and require clear and convincing proof thereof." Baker v. Townsend, 484 So.2d 1097, 1098 (Ala. Civ. App. 1986), citing Walton v. Walton, 409 So.2d 858 (Ala. Civ. App. 1982)....'
"Clear and convincing evidence is
" ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
" '§ 6-11-20[ (b) ](4), Ala. Code 1975.'
" L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002).
" 'In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer ], 689 So.2d [194,] 195 [ (Ala. Civ. App. 1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala. Civ. App. 1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala. 1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala. Civ. App. 1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).'
" Gray v. Bush, 835 So.2d 192, 194 (Ala. Civ. App. 2001)."
Melton v. Jenkins, 92 So.3d 105, 107 (Ala. Civ. App. 2012).
"[F]or trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, 'the judge must view the evidence presented through the prism of the substantive evidentiary burden'; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would 'produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability *308 as to the correctness of the conclusion.' ..."
Ex parte McInish, 47 So.3d 767, 778 (Ala. 2008). With regard to a summary judgment, this Court has also stated that, " ' "[w]here the evidence is in conflict, the issue must [be tried to the fact-finder]." Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47 (Ala. 1984).' " Blackmon, 895 So.2d at 904 (quoting Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003) ).
In this case, there was no argument that Lecil and Harbin lacked the capacity to marry. Rather, the question is whether Lecil and Harbin had a "present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships" and whether there was "public recognition of the relationship as a marriage and public assumption of marital duties." Melton, 92 So.3d at 107. The evidence before the circuit court showed that Estess, who was an attorney, sent letters to Lecil regarding Lecil's estate planning. In a letter to Lecil dated July 10, 2012, Estess stated: "I wanted to remind you that we have not revised your will to provide for Charlotte." In a letter to Lecil that was dated August 16, 2012, Estess stated, in pertinent part:
"This letter is to confirm our discussion about two very important matters:
"First, Charlotte will be entitled to one-third (1/3) of your estate upon your death as a result of her being your 'common-law' wife. If you do not want her to receive this much, then I would recommend you negotiate a Nuptial Agreement with her and participate in a civil service to formally recognize her as your spouse. Once the Nuptial Agreement is in place, your will can be revised to provide a benefit for her lifetime. Ideally, you could provide her with a trust fund, the balance of which ultimately would return to your sons or grandchildren upon her death."
(Emphasis added.) Estess also sent a letter to Lecil dated September 7, 2012, to which he attached a draft of a will and a memorandum summarizing the provisions of the draft will. The memorandum stated, in pertinent part:
"Item VI disposes of the balance of your estate. Item VI(a) states that if Charlotte survives you, she is to receive one-third (1/3) of your residuary estate outright. This provision also contains a statement that you consider Charlotte to be your common-law wife and all provisions of your will are to be interpreted as if she is your spouse."
The second paragraph of the draft will states, in pertinent part: "All references hereto to my wife shall refer to CHARLOTTE HARBIN." The draft will was signed by Lecil, but it was not signed by any witnesses.
In support of the motion for a summary judgment, Estess attached his affidavit in which he stated, in pertinent part:
"17. ... I also advised [Harbin] could claim that she was Mr. Thomas's common-law spouse. I explained the elements of common-law marriage to Mr. Thomas, Mr. Thomas specifically denied referring to Ms. Harbin as his wife.
"18. Mr. Thomas repeatedly told me that he loved Ms. Harbin but that he did want to marry Ms. Harbin [sic].
"19. Mr. Thomas also told me that he could not marry Ms. Harbin because he promised his late wife Tommie that he would not remarry.
"20. In August 2012, Mr. Thomas instructed me to draft a will that provided for Ms. Harbin.
*309 "21. Mr. Thomas did not instruct me to identify Ms. Harbin as his wife....
"22. Shortly after I sent the will to Mr. Thomas, I went to visit him. He informed me that he would not sign the will but instructed me to prepare a deed for the house identified in the draft will so that Mr. Thomas could transfer it to Ms. Harbin.
"23. I have reviewed the personal income tax returns filed by Mr. Thomas during the period from 2009 through 2011. In each of these returns, Mr. Thomas identifies himself as single."
In response, Harbin presented evidence indicating that she and Lecil began living together as husband and wife in September 2009; that she and Lecil had telephoned his sons to tell them that they were married; that, after that, they held themselves "out to the public as husband and wife and acknowledged [their] agreement to each other to live together as a married couple"; that, at Lecil's request, she quit her job in January 2010 to stay at home with him and to live together as husband and wife; that she and Lecil opened a joint checking account at Regions Bank; and that Lecil had added her to two of his credit-card accounts. The checks for the Regions Bank account included the names "Lecil Thomas" and "Charlotte Thomas." Additionally, Harbin attached copies of checks written on an account at Bank Independent. The only name included on those checks was "Lecil V. Thomas." One of those checks was made payable to "Charlotte Thomas" in the amount of $300,000, and appeared to be signed by Lecil. Harbin also attached a copy of one of the credit cards that showed her name as "Charlotte Thomas."
Further, in her affidavit, Harbin stated:
"Attached as Exhibit 'C' is a letter to [Lecil] dated September 7, 2012, from Glenn E. Estess, Jr., with a draft of a Will and memorandum prepared by Mr. Estess. On page 26 of the Will draft is the signature of my late husband. Lee signed the Will draft at our home on Foster Nolan Road. We had moved to this house from 1174 N. Shore Drive. Mr. Estess was supposed to come see Lee to discuss the Will but never came."
Harbin also submitted the copy of an information sheet from Lecil's medical records at a health facility identified as the Spine & Neuro Center. The sheet indicated that Lecil was married and that his wife was "Charlotte Thomas." The information sheet was dated January 28, 2013, and appeared to be signed by Lecil.
Additionally, Lecil's death certificate indicated that Lecil was married; listed Harbin as Lecil's spouse; and indicated that one of Lecil's sons was the informant. Finally, Lecil's obituary listed Harbin as his wife, and Harbin said that she and Lecil's sons were present when the information for the obituary was provided.
In this case, there is a conflict in the evidence as to whether a common-law marriage existed. Therefore, there is a genuine issue of material fact as to whether a common-law marriage existed, and the circuit court could not have validly entered a summary judgment in favor of Estess on the ground that a common-law marriage did not exist based on the evidence before it. Thus, the appellees' argument in this regard is without merit.
Conclusion
For the above-stated reasons, the circuit court erroneously entered a judgment for the appellees on Harbin's petition seeking an omitted spouse's share. Accordingly, we reverse the circuit court's judgment and *310 remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Main, Bryan, and Mendheim, JJ., concur.
Shaw, J., concurs in the result.
Sellers, J., dissents.

In her original petition in the probate court, Harbin refers to herself a "Charlotte Harbin." However, in other places, she refers to herself as "Charlotte Harbin Thomas" or "Charlotte Thomas." For ease of reference, we refer to her as "Harbin" in this opinion.

As the Court of Civil Appeals noted in Dunning v. Mayhew, 240 So.3d 616, 616 n. 1 (Ala. Civ. App. 2017) :
"The common-law marriage at issue in this case was entered into before January 1, 2017, the effective date of § 30-1-20, Ala. Code 1975, which provides that '[n]o common-law marriage may be entered into in this state on or after January 1, 2017,' but that '[a]n otherwise valid common-law marriage entered into before January 1, 2017, shall continue to be valid in this state.' "

It appears that the circuit court conducted a hearing on Estess's motion, but a transcript of that hearing is not included in the record on appeal.

In its order, the circuit court indicated that the amount of the check was "$1,000.00." However, it appears undisputed that the amount of the check was actually $1,000,000.

Rather, the appellees cite Alabama cases in which the dates listed in the facts indicate that the claim for the omitted spouse's share had been filed within six months. However, the courts did not address the timeliness of those petitions or any issue regarding when such a petition must be filed. At best, it appears that the appellees cite these cases to support their assertion that it is common practice for "those ... seeking recognition of a common law marriage for the purpose of establishing heirship" to file a petition within six months. (Appellees' brief at p. 17.)